# FOR PUBLICATION



**FILED**

Sep 19 2013, 5:33 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL A. SETLAK**
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JUSTIN D. MAURER, ) | |
| ) | |
| Appellant-Respondent, ) | |
| ) | |
| vs. ) | No.  02A03-1304-PO-129 |
| ) | |
| CRYSTAL COBB-MAURER, ) | |
| ) | |
| Appellee-Petitioner. ) | |

APPEAL FROM THE ALLEN CIRCUIT COURT
The Honorable Frederick A. Schurger, Senior Judge
Cause No. 02C01-1302-PO-486

**September 19, 2013**

**OPINION - FOR PUBLICATION**

**ROBB, Chief Judge**

Justin Maurer appeals the trial court's issuance of an Order for Protection against him in favor of Crystal Cobb-Maurer. Justin raises the following issue for our review: whether there was sufficient evidence to support the issuance of the protective order. Concluding there was not sufficient evidence for the trial court to issue the protective order, we reverse.

Facts and Procedural History

On February 27, 2013, Crystal petitioned for and obtained an ex parte Order for Protection against Justin. On March 7, 2013, the protective order action was transferred to the dissolution of marriage action pending between the parties in the Allen County Circuit Court. On March 18, 2013, that court held a de novo hearing on the Petition for Order for Protection, at which Crystal and Justin appeared in person and by counsel. The trial court requested that counsel for both parties proceed in summary fashion, and neither Crystal nor Justin testified.[1]

Crystal's counsel stated that Crystal had been the recipient of constant emails and text messaging from Justin. Her counsel offered only one email into evidence but alleged it was "one of many emails" exchanged between the parties.[2] Transcript at 6. In the three page

---

[1] Counsel for both parties proceeded by stating a summary of the facts of the case, resulting in a back-and-forth exchange between the attorneys. Before making its ruling, the trial court asked Crystal and Justin whether everything said on their behalf was true, to which both gave a simple "yes" answer. The Indiana Rules of Trial Procedure and the Indiana Rules of Evidence neither explicitly allow nor prohibit this practice as a proper method of presenting evidence, but neither party objected to carrying on the hearing in this fashion. Suffice it to say, the line between evidence and argument was significantly blurred.

[2] The email was sent February 11, 2013. Aside from the email, the only other documentary evidence admitted at the hearing was an investigative report by the Indiana Department of Child Services, investigating alleged abuse or neglect of a dependent by Crystal. The report concluded that the allegations were unsubstantiated and that the case should be closed.

email, Justin wishes Crystal a "Happy Valentine's Day" and tells her he loves her and wishes to restore their marriage. Appellant's Appendix at 33. Justin conveys his disapproval of and forgiveness for Crystal's romantic relationship with another man and his disapproval of the concept of divorce, quoting a number of Bible passages throughout. The exhibit also includes Crystal's reaction to Justin's email, given while forwarding the email to her attorney: "Now he wants our marriage back together. I feel like he [is] a saleman [sic] trying to sell me on somthing [sic]." Id. Crystal's counsel also alluded to a December 2012 incident, where Crystal attempted to walk away from Justin, and he "physically touched [Crystal] in some sort of effort to get her to abide by his wishes to save the marriage." Tr. at 5.

The trial court gave only this comment on the evidence before ruling: "I've got an incident I'm bothered by the uh extent of the uh, uh harassing, uh or the email uh exchanges, I think are, reached the level of harassment." Id. at 13. The trial court later issued its Order for Protection against Justin. This appeal followed. Additional facts will be supplied as necessary.

<u>Discussion and Decision</u>

I.      Standard of Review

As an initial matter, we note that Crystal did not file an appellee's brief. When an appellee fails to file a brief in response, we need not undertake the burden of constructing an argument on the appellee's behalf. <u>Tisdial v. Young</u>, 925 N.E.2d 783, 784 (Ind. Ct. App. 2010). We will reverse the trial court's judgment if the appellant presents a case of prima

3

facie error, which is defined in this context as "at first sight, on first appearance, or on the face of it." Id. at 784-85.

When reviewing the sufficiency of evidence to support a protective order, the reviewing court will neither reweigh the evidence nor judge witness credibility. Id. at 785. We consider only the probative evidence and reasonable inferences that support the judgment. Id.

## II. Order of Protection

We approach this discussion with a firm understanding of the importance of protective orders within our judicial system and the vital role that they play in our society's attempt to curb domestic violence. These matters should be treated with the care and consideration that the gravity of their purpose demands. To that end, we believe that this case demonstrates the shortcomings—on many levels—of a hearing on such matters conducted without thorough presentation of the evidence and examination of the parties involved.

Justin argues on appeal that there was not sufficient evidence to support the issuance of a protective order and that the trial court erred by finding Crystal established domestic or family violence or stalking by a preponderance of the evidence. The Indiana Civil Protection Order Act ("CPOA") provides that a protective order may be issued when a trial court finds, by a preponderance of the evidence, that the respondent represents a credible threat to the safety of petitioner—that is, that domestic or family violence has occurred. Ind. Code § 34-26-5-9(f). "Domestic or family violence" is defined as the occurrence of at least one of the following acts by the respondent:

4

> (1)    Attempting to cause, threatening to cause, or causing physical harm to another family or household member.
> (2)    Placing a family or household member in fear of physical harm.
> (3)    Causing a family or household member to involuntarily engage in sexual activity by force, threat of force, or duress.
> (4)    Beating . . . , torturing . . . , mutilating . . . , or killing a vertebrate animal without justification with the intent to threaten, intimidate, coerce, harass, or terrorize a family or household member.

Ind. Code § 34-6-2-34.5.  For the purposes of the CPOA, the definition of "domestic or family violence" "also includes stalking (as defined in IC 35-45-10-1) or a sex offense under IC 35-42-4 . . . ."  Id.  In making its determination here, the trial court's findings state only that "[t]he Petitioner has shown, by a preponderance of the evidence, that domestic or family violence has occurred sufficient to justify the issuance of this Order," without signaling whether its finding is based upon one of the delineated acts—involving violence or threat of violence—or based upon a finding that stalking occurred.  Appellant's App. at 6.  We will discuss first whether there was sufficient evidence to support issuance of the protective order under one of the delineated acts above, and second, we will discuss whether there was sufficient evidence to find that stalking occurred.[3]

## A. Domestic or Family Violence

First, we consider whether there was sufficient evidence presented at the hearing to conclude that Justin committed an act of domestic or family violence, as defined by Indiana Code section 34-6-2-34.5.  In other words, whether the evidence could support a finding that

---

[3] Because the record contains no reference to or implication that a sex offense or act involving an animal was committed by Justin, we conclude that the protective order could not have been issued on those grounds.  Thus, we will forgo any discussion of those portions of the statute.

Justin "attempt[ed] to cause, threaten[ed] to cause, or caus[ed] physical harm" to Crystal or placed her "in fear of physical harm." Ind. Code § 34-6-2-34.5(1)-(2).

Evidence of such acts of physical violence or threat of violence was not presented at the hearing. The email, which Crystal's attorney submitted into evidence, is devoid of any physical threat or even the intimation of a threat of physical harm. And Crystal's attorney did not mention any occurrence of a verbal threat issued from Justin to Crystal. Further, the only reference to any physical contact whatsoever between the parties was Crystal's attorney's mention of an occasion where Justin "physically touched [Crystal] in some sort of effort to get her to abide by his wishes to save the marriage." Tr. at 5. Her attorney did not elaborate on this incident or give any indication that Justin's act of touching Crystal was even remotely violent. Indeed, her attorney noted that he believed the incident, in conjunction with the email, was "relevant to a finding of harassment," rather than a finding of physical harm or threat of harm. Id. at 7.

What is perhaps most illuminating is the trial court's own statement, in which it expressed that its ruling was based upon the email and its belief that those exchanges reached the level of harassment: "I've got an incident I'm bothered by the uh extent of the uh, uh harassing, uh or the email uh exchanges, I think are, reached the level of harassment." Id. at 13. Given the nature of the evidence presented and the trial court's characterization of the evidence as showing harassment rather than a threat of harm, we conclude that the trial court's issuance of the protective order was not—and could not have been—based upon a finding of violence, threat of violence, or an act placing Crystal in fear of physical harm. We

6

move, then, to a discussion of whether the evidence was sufficient to support a finding by the trial court that stalking occurred.

## B. Stalking

Indiana law defines "stalking" as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." Ind. Code § 35-45-10-1. "Harassment" is defined as "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." Ind. Code § 35-45-10-2.

As an initial matter, it is unclear from the trial court's statement whether its finding of harassment is based upon the sole email entered into evidence or upon the existence of "many" others as alleged by Crystal's counsel at the hearing. Under Indiana's anti-stalking law, the term "repeated" means that the impermissible contact occurs more than once. Mysliwy v. Mysliwy, 953 N.E.2d 1072, 1077 (Ind. Ct. App. 2011), trans. denied. Given our standard of review, we will assume that the trial court considered not only the email in evidence, but also Crystal's counsel's reference to "many" other emails or text messages. However, the mere fact that contact occurred between Justin and Crystal on more than one occasion cannot—without more—constitute stalking. There must also be evidence that Justin's conduct qualified as harassment that would cause a reasonable person to feel

terrorized, frightened, intimidated, or threatened and that it actually caused Crystal to feel terrorized, frightened, intimidated, or threatened. See Ind. Code § 35-45-10-1.

It is often the case that stalking is found where contact between persons includes some form of physical threat. See, e.g., Eberle v. State, 942 N.E.2d 848, 860-61 (Ind. Ct. App. 2011) (victim received lewd communications from Eberle, and after learning that she had informed the police, Eberle continued to contact the victim, telling her to "watch [he]r back" and that he would "f*** [her] up"), trans. denied; Smith v. State, 802 N.E.2d 948, 950 (Ind. Ct. App. 2004) (Smith left victim eight or nine voicemail messages, at least one of which included a threat on the victim's life). However, there is no requirement that the contact at issue be threatening on its face, and stalking may be found where other evidence is sufficient to prove that the contact amounted to harassment. See Andrews v. Ivie, 956 N.E.2d 720 (Ind. Ct. App. 2011).

In Andrews v. Ivie, this court affirmed a trial court's issuance of a protective order, holding that sufficient evidence existed to support the trial court's finding that Ivie was a victim of stalking. Id. at 725-26. The victim in Andrews testified that she and Andrews ended their relationship in December 2008, and after a "slow break-up," she sent Andrews an email in April 2009 asking him to stop contacting her. Id. at 721. Despite her request, Andrews continued contacting Ivie via email, text message, Facebook, and sent her numerous gifts via snail mail. Id. Ivie made additional demands that Andrews cease contacting her and attempted to block Andrews from her phone service, email, and Facebook account. Id. However, Andrews remained undeterred, contacting Ivie during the months of April, May,

8

July, October, November, and December of 2009, as well as several times throughout 2010, until she finally petitioned for a protective order in November of 2010. Id.

At the hearing, Ivie testified that she was disturbed by Andrews's continuing efforts to contact her despite her repeated requests to stop; his unwelcome contacts were causing her to "suffer emotional distress"; he was twice her size, an avid gun collector, and knew where she lived, and she was concerned he had the means to hurt her; he had been on and off of anti-depressants; she "worr[ied] about the tone of his emails"; and she testified she was "very concerned about his irrational mind and how it might affect me." Id. at 722. When Ivie filed her petition, she filed with the trial court sixty-four pages of emails she had received from Andrews. Id. Andrews argued that gifts and messages expressing love for Ivie should not be considered stalking. Id. 723-24. But at the end of the hearing, after all the evidence and testimony had been admitted, the trial court said

> [T]his is the largest stack of emails, mail delivery, [and] presents I've ever seen in a case in ten years of doing this and this says to me that, you know, maybe you're doing the nice thing and that's fine but unfortunately she says it's bothering her. She's, in multiple emails up here, told you to stop contacting her.

Id. at 722.

The wealth of evidence and testimony presented in Andrews stands in stark contrast to the scant evidence presented at the hearing in this case. It is true that both cases involve email messages from the respondent professing his love for the petitioner. But that is where the comparison ends.

9

The court in <u>Andrews</u> dismissed the notion that the trial court improperly issued the order based upon the content of messages not offered into evidence, <u>id.</u> at 724, and we, likewise, conclude that the trial court could not have issued its order in this case based on the content of any messages not entered into evidence. Instead, the court in <u>Andrews</u> determined that the trial court based its ruling on the extent of the contacts, numerous unwelcome gifts from Andrews, Ivie's repeated demands that he leave her alone, her attempts to avoid contact from him, and Ivie's testimony regarding the effect of the contacts on her. <u>Id.</u> Any qualitatively similar evidence is conspicuously absent in this case.

With respect to the extent of contact between Justin and Crystal, the trial court had before it a single email entered into evidence and a claim by Crystal's counsel that it was "one of many."[4] Tr. at 6. Her counsel's description of the emails as "constant[]" is noticeably vague and is more akin to hyperbolic argument than to evidence. <u>Id.</u> at 5. There was no mention of particular dates on which the contacts occurred, an estimation of the number of impermissible contacts over the course of a period of time, or even evidence of when the alleged impermissible contact began. "Many" emails over the course of an undisclosed timeframe could be as few as two or as numerous as two million; the trial court's guess would have been as good as ours.

---

[4] After moving to admit the only email contained in the record, Crystal's counsel said of additional emails between the parties: "I don't want to share all of them, Judge, because frankly it would, it would create, it would require you to create a new substantial file." Tr. at 5. Had Crystal's counsel chosen to share additional emails with the trial court, that would have almost certainly created a more substantial record for both the trial court and for our own review.

10

Moreover, unlike the victim in <u>Andrews</u> who testified that she repeatedly asked Andrews to leave her alone and made serious attempts to avoid contact with him, Crystal—or rather, her attorney—did not state that she had ever requested Justin stop contacting her or made any attempt to avoid communication with him, and the trial court could not simply assume that Crystal took these actions. We find this lack of evidence significant, because one could hardly characterize mutual communication between two parties as harassment within the meaning of the stalking statute.

Finally, and most importantly, is the question of the effect of the contacts on Crystal and whether they could—and actually did—cause her to feel terrorized, frightened, intimidated, or threatened. In <u>Andrews</u>, the victim testified that the unwelcome contacts were "disturbing," "very upsetting," caused her "emotional distress," and made her "very concerned" for her safety. <u>Andrews</u>, 956 N.E.2d at 722. But in this case, Crystal offered no testimony at the hearing regarding the effect the contacts had on her.[5] In fact, Crystal offered <u>no testimony at all</u> during the hearing. Where an inquiry is so dependent upon the victim's perception and state of mind—as is the case when issuing a protective order on the grounds of stalking—Crystal's lack of participation works only to diminish the record and hinder our review.

---

[5] The bare assertions by Crystal's attorney that the contact was harassment and that Crystal felt harassed are similar to his characterization of the extent of contacts as "constant." Those statements by her attorney were more akin to argument before the trial court than testimonial evidence. Without elaboration or explanation by her counsel or testimony from Crystal herself, her attorney's statements in that vein are insufficient to warrant a finding that the contacts reached the level of stalking. One cannot expect to merely say the magic word "harassment" and instantaneously prove that stalking occurred; such practice would be a truly circular endeavor.

After a review of the record, we are left with the firm conviction that there was not sufficient probative evidence presented at the hearing to support a finding that the contacts in evidence would cause a reasonable person and in fact caused Crystal to feel terrorized, frightened, intimidated, or threatened.  Therefore, there was not sufficient evidence to support the trial court's issuance of a protective order.

## Conclusion

Concluding there was insufficient evidence presented at the hearing to support the trial court's issuance of a protective order, we reverse.

Reversed.

RILEY, J., and KIRSCH, J., concur.