## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 12 2015, 5:26 am

*Kevin S. Smith*

**CLERK**
of the supreme court, court of appeals and tax court

| APPELLANT PRO SE | ATTORNEY FOR APPELLEE |
|---|---|
| Rasha El Adawy | Thomas L. Landwerlen |
| Carmel, Indiana | Landwerlen & Rothkopf, LLP |
| | Indianapolis, Indiana |

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rasha El Adawy, | June 12, 2015 |
| *Appellant-Respondent,* | Court of Appeals Case No. 49A05-1409-PO-445 |
| v. | Appeal from the Marion Superior Court |
| Mary Sanders, | The Honorable Gary L. Miller, Judge |
| *Appellee-Petitioner.* | Trial Court Case No. 49G21-1404-PO-010832 |

**Mathias, Judge.**

[1] Rasha El Adawy ("El Adawy") appeals the trial court's issuance of a protective order against her in favor of Dr. Mary Sanders ("Dr. Sanders"). El Adawy raises two issues on appeal, which we restate as:

> 1) Whether the evidence was sufficient to issue a protective order, and

> 2) Whether the trial court abused its discretion in admitting evidence relating to El Adawy's mental health diagnoses and treatment.

We affirm.

## Facts and Procedural History

El Adawy is a former patient of psychologist Dr. Mary Sanders ("Sanders"). On March 7, 2012, El Adawy terminated their professional relationship. However, over the next two years, and despite the termination of their professional relationship, El Adawy continued to contact Dr. Sanders repeatedly. Those contacts included dozens of phone calls, voicemails, faxes, emails to Dr. Sanders's office and to her personal email account, cards and packages sent through the mail and delivered in person to Dr. Sanders's office, threats to file complaints against Dr. Sanders, and a Facebook friend request. Dr. Sanders also became aware that El Adawy had printed out a photograph of Dr. Sanders and carried it around with her. In a March 2014 email to Dr. Sanders, El Adawy began with "[h]ere I go contacting you after promising over and over never to do it again" and later in the lengthy email made reference to the Jodi Arias murder case and asked Dr. Sanders if she "still think[s] I am homicidal." Appellee's App. p. 117.

El Adawy's behavior frightened Dr. Sanders and her staff so much that for the first time in her thirty-year career, Dr. Sanders instituted home and office safety protocol plans with professional security providers. She also reached out to a professional psychology organization for advice on how to deal with El Adawy's conduct. On April 3, 2014, Dr. Sanders filed a petition for a protective

order against El Adawy, alleging that El Adawy's behavior constituted stalking. The trial court issued an ex parte protective order, then held a hearing on the protective order on September 9, 2014. At the hearing, Dr. Sanders testified that she "felt incredibly threatened by the drama that [El Adawy] was bringing to the office, and my experience of threats, and my inability to be successful in setting boundaries because I was no longer her therapist." Tr. p. 13. Dr. Sanders also testified that she was particularly alarmed by El Adawy's email referencing Jodi Arias, a woman who was convicted of brutally murdering her boyfriend and who was, like El Adawy, diagnosed with borderline personality disorder. Dr. Sanders testified that given her knowledge of El Adawy's mental health issues, she "started to become very frighten[ed] [that] she's at least thinking about violent behavior." Tr. p. 15.

After hearing the evidence, the trial court held that the ex parte order of protection should remain in effect until September 9, 2016.

El Adawy now appeals.

## I. Sufficiency of the Evidence

We begin by noting that the El Adawy's appellant's brief is deficient in many respects. In Indiana, it is well settled that *pro se* litigants are held to the same standard as licensed attorneys. *Goossens v. Goossens,* 829 N.E.2d 36, 43 (Ind. Ct. App. 2005). El Adawy provides no statements of the applicable standards of review, which is required by Indiana Appellate Rule 46(A)(8). A party waives an issue where the party fails to provide a statement of the standard of review.

*See Ramsey v. Review Bd. of Workforce Dev.,* 789 N.E.2d 486, 490 (Ind. Ct. App. 2003) (holding that the claimant's substantial noncompliance with rules of appellate procedure resulted in waiver of his claims on appeal). El Adawy has therefore waived the issues raised in this appeal. Waiver notwithstanding, we will briefly address the issues raised in El Adawy's brief, as best as we are able to discern them.[1]

[8] El Adawy first argues that the evidence was insufficient to support the issuance of the civil protection order against her. Specifically, she argues that her relationship with Dr. Sanders was professional, not domestic, and that Sanders did not provide any evidence that El Adawy threatened her. In reviewing the sufficiency of the evidence to support the issuance of such an order, we apply the familiar test for determining the sufficiency of evidence. *See Tons v. Bley,* 815 N.E.2d 509, 511 (Ind. Ct. App. 2004). Thus, we neither reweigh the evidence nor resolve questions of credibility, and we look only to evidence supporting the trial court's judgment, together with the reasonable inferences to be drawn therefrom. *Id.*

[9] Under Indiana Code section 34-26-5-2(a):

> A person who is or has been a victim of domestic or family violence may file a petition for an order for protection against a:

---

[1] While we will endeavor to address the issues presented, we will not address those arguments that are so ill-formed and unsupported that we cannot fully understand them. We may not become an advocate for El Adawy and make her case for her. *See Omni Ins. Group v. Poage,* 966 N.E.2d 750, 753 (Ind. Ct. App. 2012); *Thacker v. Wentzel,* 797 N.E.2d 342, 345 (Ind. Ct. App. 2003).

> (1) family or household member who commits an act of domestic or family violence; or
>
> (2) person who has committed stalking under IC 35-45-10-5 or a sex offense under IC 35-42-4 against the petitioner.

Dr. Sanders's petition for an order for protection alleged that she was a victim of stalking by El Adawy, and the trial court's order found that Dr. Sanders proved by a preponderance of the evidence that stalking occurred.

[10] Stalking is defined as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." Ind. Code § 35-45-10-1. The course of conduct required to constitute stalking as grounds for issuance of a protective order need not involve any threats to the victim. *Andrews v. Ivie*, 956 N.E.2d 720 (Ind. Ct. App. 2011).

[11] "Harassment" is defined as "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." Ind. Code § 35-45-10-2. For acts of harassment to be "repeated," and thus prohibited under anti-stalking law, acts must occur more than once. *Johnson v. State*, 721 N.E.2d 327 (Ind. Ct. App. 1999).

[12] Here, the evidence favorable to the trial court's judgment showed that El Adawy contacted Dr. Sanders nearly fifty times after the termination of their

psychologist-patient relationship. Those contacts included voicemails, faxes, dozens of emails to Dr. Sanders's office and to her personal email account, cards and packages sent through the mail and delivered in person to Dr. Sanders's office, threats to file complaints against Dr. Sanders, a Facebook friend request, and phone calls. Some of those contacts were requests from El Adawy for medical records, and some were requests to be referred to another therapist. Others were more alarming, such as the aforementioned Jodi Arias reference, an "Email from Respondent to Personal Email suggesting I put my picture on my website and promising not to again print off my picture and carry it with her," Appellee's App. p. 108, "extremely negative reviews [of] Petitioner and in one of those reviews, [asking] God for justice," *Id.* at 110, a twenty-six page letter, an attempt to access information about Dr. Sanders on PsychologyToday.com, and a voicemail stating that Dr. Sanders "doesn't have to worry anymore because I will not be here for anyone to worry about me," *Id.* at 109.

[13] Dr. Sanders notified El Adawy on May 8, 2013 that she would no longer accept communications from her, she refused cards and packages sent by El Adawy, she consulted other professionals for advice on how to deal with the situation, and she responded to a March 26, 2014 email from El Adawy with a message stating that she no longer wanted any direct contact with El Adawy. Dr. Sanders testified that El Adawy persisted in contacting her despite this and that El Adawy's conduct caused Dr. Sanders and her office staff to feel "incredibly threatened." Tr. p. 13. It is unclear when Dr. Sanders notified El Adawy for the

first time that she wanted no further contact, but the tone of El Adawy's communications indicate that El Adawy was aware that her contact was unwelcome. El Adawy argues that she never outright threatened Dr. Sanders, but we have held that contact need not be threatening on its face to constitute stalking. *See Maurer v. Cobb-Maurer*, 994 N.E.2d 753 (Ind. Ct. App. 2013) (there is no requirement in the anti-stalking statute that the contact at issue be threatening on its face, and stalking may be found where other evidence is sufficient to prove that the contact amounted to harassment).

[14] Under these facts and circumstances, we conclude that Dr. Sanders presented sufficient evidence to prove that El Adawy stalked her. *See Andrews v. Ivie*, 956 N.E.2d 720 (Ind. Ct. App. 2011) (evidence supported finding that respondent engaged in knowing or intentional course of conduct involving repeated or continuing harassment of petitioner; despite petitioner's demands that respondent leave her alone, respondent initiated multiple contacts, including gifts, emails, texts, and social network messages, and petitioner testified that the unwelcome contacts caused her emotional distress). *Cf. Maurer v. Cobb-Maurer*, 994 N.E.2d 753 (Ind. Ct. App. 2013) (evidence was insufficient to establish stalking where only one email was admitted into evidence, there was no evidence that petitioner asked respondent to cease contacting her, and petitioner did not testify regarding the effect respondent's contacts had on her).

## II. Mental Health Records

[15] El Adawy also argues that the trial court erred in admitting evidence related to her mental health diagnoses and treatment. She specifically challenges the

admission of voicemails she left Dr. Sanders, Dr. Sanders's testimony about her communications with El Adawy (some of which relate to El Adawy's mental health issues), and Dr. Sanders's testimony about El Adawy's behaviors that coincide with her diagnosed mental health issues. El Adawy concedes that she did not object to the admission of the evidence at trial and, in fact, at least twice expressly consented to admission. El Adawy now contends, however, that the trial court's admission of the evidence constitutes a violation of her due process rights because the trial court "did not take into consideration her emotional and psychological condition, which put her in an extremely weak position, and made it difficult for her to make a decision as to whether to waive her ("HIPAA") rights or not."[2] Appellant's Br. at 38. El Adawy's argument appears to be that some of the evidence presented at the hearing was confidential due to the psychologist-patient privilege that existed between herself and Dr. Sanders and that the trial court erred in accepting her waiver of the privilege because she did so unknowingly or unintentionally.

[16] The psychologist-patient privilege is codified at Indiana Code section 25-33-1-17, which states that "[a] psychologist licensed under this article may not disclose any information acquired from persons with whom the psychologist has dealt in a professional capacity." Pursuant to the statute, the privilege does not apply where "the psychologist has the expressed consent of the client" to disclose the information. *Id.*

---

[2] Both parties refer in their briefs to "HIPAA rights." We assume that, by this, they mean communications made confidential by the psychologist-patient privilege.

[17] Because El Adawy expressly and affirmatively consented to the admission of the evidence, and because El Adawy again failed to provide a statement of the applicable standard of review or cite to cogent authority as required by Appellate Rule 46(A)(8), this issue is waived. *See Ramsey*, 789 N.E.2d at 490. Waiver notwithstanding, her claim has no merit. Although El Adawy contends that she was unaware of the implications of her consent, her statements and those of her counsel indicate otherwise. Immediately prior to Dr. Sanders's testimony, El Adawy's counsel declared, "My client had a medical therapeutic relationship [with] the Plaintiff, and she waives her—my client, *being advised*, waives her HIPAA rights." Tr. p. 3 (emphasis added). Later in the proceeding, Dr. Sanders's counsel asked El Adawy, "You heard your lawyer at the beginning of the trial saying that you are waiving your HIPAA rights. Did you hear him say that?" El Adaway answered, "Yes, he asked me and I said 'yes.'" Tr. p. 81. Dr. Sanders's counsel asked, "And you agree with that on the record," and El Adaway responded, "Yes, absolutely." *Id*. Under these facts and circumstances, it is clear that El Adawy waived the psychologist-patient privilege protecting her conversations and communications with Dr. Sanders. El Adaway stated unequivocally that she consented to the admission of evidence related to her mental health and her counsel's statement indicates that he had advised her beforehand regarding her waiver.

## Conclusion

[18] By failing to comply with Appellate Rule 46(A)(8), El Adawy waived the issues presented in this appeal. Waiver notwithstanding, we conclude that Dr. Sanders

presented sufficient evidence to support the trial court's issuance of the protective order and that the trial court did not abuse its discretion in admitting evidence of El Adawy's mental health diagnoses and treatment.

[19] Affirmed.

May, J., and Robb, J., concur.