## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 03 2015, 5:47 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Karen Yvonna Renfro
New Albany, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jerrud P. Seaton, *Appellant-Respondent,* <br><br> v. <br><br> Mindy S. Foust, *Appellee-Petitioner* | December 3, 2015 <br><br> Court of Appeals Case No. 88A01-1506-PO-745 <br><br> Appeal from the Washington Superior Court <br><br> The Honorable Frank Newkirk, Jr., Judge <br><br> Trial Court Cause No. 88D01-1505-PO-254 |

**Baker, Judge.**

[1] Jerrud Seaton appeals the protective order entered by the trial court that prohibits him from contacting Mindy Foust, her three children, her fiancé, and the fiancé's three children. Seaton argues that the evidence is insufficient to support the protective order and that, even if the evidence is sufficient, it was erroneous to include anyone aside from Foust on the order. Finding that the evidence is insufficient, we reverse.

## Facts

[2] Seaton and Foust were married for six years, and one child (now six years old) was born of the marriage. Seaton and Foust share physical custody of their daughter and have been able to coparent in a friendly and cooperative manner.

[3] On May 1, 2015, Seaton stopped by Foust's residence to drop off a bag of clothes for their daughter. Foust, who was home alone, met him at the door and they engaged in a "decent conversation" until Seaton mentioned a possible upcoming move to Florida and Foust replied that she was considering a future move to New York. Tr. p. 12. Seaton then "got angry and he said if you try and take my daughter . . . I'll kill him." *Id.* Foust inferred that he was referring to Samuel Bortka, her fiancé. They continued talking, moving on to other topics, until they returned to the subject of possible out-of-state moves. Seaton said, "I'll kill him and he won't be the only one[,] and [Foust] said, well what's that supposed to mean and he goes well I won't kill you . . . ." *Id.* at 13. Foust testified that she was "not really sure" who Seaton was referring to when he made that statement. *Id.* Additionally, Foust testified that there was "a lot of

reconciling" in the conversation, "a lot of, I'm sorrys," and even "a hug and a lot of that thing[.]" *Id.* at 67.

[4] On May 7, 2015, Foust filed a petition for a protective order. Pending a hearing, the trial court entered an ex parte protective order on May 13, 2015. On May 28, 2015, the trial court held a hearing on the petition. Foust appeared pro se and Seaton was present and represented by counsel. At the hearing, Foust testified to the events of May 1. She also testified that Seaton had been violent during their marriage, referencing multiple instances that had occurred three to four years earlier. Most of the incidents related to Seaton breaking household objects. Foust admitted that she never sought a protective order, that she did not seek to pursue domestic violence charges, and that she did not seek a divorce until years later. Following the hearing, the trial court entered an order of protection[1] naming Foust, Bortka, and their respective children[2] as protected persons. Seaton now appeals.

# Discussion and Decision

[5] Initially, we note that Foust did not file an appellee's brief. When an appellee fails to file a brief in response, we will not undertake the burden of constructing an argument on her behalf. *Tisdial v. Young*, 925 N.E.2d 783, 784 (Ind. Ct.

---

[1] Although the order of protection bears the title "Ex Parte Order of Protection," the trial court later issued an order clarifying that it was not, in fact, an ex parte order. Appellant's App. p. 17-19.

[2] The daughter of Seaton and Foust was not included in the protective order.

App. 2010). Instead, we will reverse the trial court's judgment if the appellant presents a case of prima facie error. *Id.* at 784-85.

[6] When reviewing the sufficiency of the evidence supporting the issuance of a protective order, we will neither reweigh evidence nor assess witness credibility. *Maurer v. Cobb-Maurer*, 994 N.E.2d 753, 755 (Ind. Ct. App. 2013). We will consider only the probative evidence and reasonable inferences that support the trial court's judgment. *Id.*

[7] A protective order may be issued when a trial court finds, by a preponderance of the evidence, that the respondent represents a credible threat to the safety of the petitioner—that is, that domestic or family violence has occurred. Ind. Code § 34-26-5-9(f). "Domestic or family violence" is defined as the occurrence of at least one of the following acts by the respondent:

(1) Attempting to cause, threatening to cause, or causing physical harm to another family or household member.

(2) Placing a family or household member in fear of physical harm.

(3) Causing a family or household member to involuntarily engage in sexual activity by force, threat of force, or duress.

(4) Beating . . . , torturing . . . , mutilating . . . , or killing a vertebrate animal without justification with the intent to threaten, intimidate, coerce, harass, or terrorize a family or household member.

Ind. Code § 34-6-2-34.5. In this case, the trial court made a general finding that domestic or family violence had occurred and that Seaton represented a credible threat to the safety of Foust or a member of her household, but it made no specific factual findings related to the case or the evidence presented at the hearing. Appellant's App. p. 18.

[8] Before addressing the evidence related to Foust, we address the evidence related to her fiancé, her three children, and his three children, all of whom were included on the protective order. Pursuant to Indiana Code section 34-2-6-9(f), the trial court was required to find that Seaton represented a credible threat "to the safety of a petitioner *or a member of a petitioner's household*." (Emphasis added). Here, the record is devoid of any evidence establishing that Bortka, his three children, or even Foust's three children, are members of her household. Consequently, the evidence is insufficient to support their inclusion in the protective order.

[9] With respect to Foust, according to her own testimony, Seaton clarified that he was not threatening to kill *her*. Therefore, the evidence does not support a conclusion that he threatened to cause her harm. As to whether the evidence supports a conclusion that he placed her in fear of physical harm, not once during the hearing did Foust testify that she was afraid, scared, or in fear during their encounter. Indeed, she testified that the conversation included reconciliations and a hug. As for the couple's history of alleged violence, we note that all of the incidents she related were years in the past. *See Tons v. Bley*, 815 N.E.2d 508, 511 (Ind. Ct. App. 2004) (holding that a reviewing court may

consider remoteness of alleged threats or acts of violence in determining whether a sufficient threat exists to warrant the issuance of a protective order). As such, there is simply no evidence in the record supporting a conclusion, or even an inference, that Seaton's conduct caused Foust to be in fear of physical harm. Therefore, we are compelled to reverse.

[10] The judgment of the trial court is reversed and remanded with instructions to vacate the protective order.

Bailey, J., concurs, and Mathias, J., dissents with opinion.

Jerrud P. Seaton,

*Appellant-Respondent,*

v.

Mindy S. Foust,

*Appellee-Petitioner*

Court of Appeals Case No.
88A01-1506-PO-745

**Mathias, Judge, dissenting.**

[11]    Because I believe that a threat to kill a member of a petitioner's household is sufficient to justify the issuance of a protective order, I respectfully dissent.[3]

[12]    First, I would note that the record reflects that Seaton's prior behavior with Foust was physically violent. According to her testimony, which the trial court obviously credited, Seaton did more than merely break things. In one incident,

---

[3] I acknowledge that Foust has failed to file an appellee's brief and that this subjects Seaton's claim to review for only prima facie error. However, even under the prima facie error standard, we are obligated to correctly apply the law to the facts of the case to determine if reversal is required. *See Mateyko v. State*, 901 N.E.2d554, 557 (Ind. Ct. App. 2009), *trans denied*.

he broke a chair, then chased his daughter from the house, where she urinated on herself from terror. Foust also related an incident where Seaton physically attacked and strangled her. This history of violence was obviously relevant and was considered by the trial court's decision to enter the protective order.

[13] Our General Assembly has dictated that the Civil Protection Order Act ("CPOA") shall be construed to promote the protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner; and the prevention of future domestic and family violence. *Mysliwy v. Mysliwy*, 953 N.E.2d 1072, 1076 (Ind. Ct. App. 2011), *trans. denied*. Pursuant to the CPOA, "[a] person who is or has been a victim of domestic or family violence may file a petition for an order for protection against a: (1) family or household member[4] who commits an act of domestic or family violence[.]" Ind. Code § 34-26-5-2(a)(1).

[14] As noted by the majority, "domestic or family violence" is defined generally by Indiana Code 34-6-2-34.5 to include[5] "the occurrence of at least one . . . of the following acts committed by a family or household member: (1) Attempting to cause, threatening to cause, or causing physical harm to another family or household member." Further, Section 9 of the CPOA provides in relevant part:

> A finding that domestic or family violence has occurred sufficient to justify the issuance of an order under this section means that a

---

[4] A family or household member is defined to include a former spouse. Ind. Code § 34-6-2-44.8(a)(1).

[5] Acts of self-defense are excluded from this definition, but there is no allegation of self-defense in this case.

> respondent represents a credible threat to the safety of a petitioner *or a member of a petitioner's household.*

Ind. Code § 34-26-5-9(f) (emphasis added). I read these statutes to mean that, if a respondent represents a credible threat to the safety of a petitioner *or a member of a petitioner's household*, then this is sufficient to show that domestic or family violence has occurred sufficient to justify the issuance of a protective order.

[15] The majority concludes that there is nothing to indicate that Seaton threatened physical harm to Foust herself. But this is not what the CPOA requires; the CPOA requires that Foust prove that Seaton threatened her or a member of her household. *See id.*

[16] Bortka, his three children, and Foust's own children were members of Foust's household who could be covered by the protective order. Indiana Code section 34-6-2-44.8 (2012) provides that:

> (a) An individual is a "family or household member" of another person if the individual:
>> (1) is a current or former spouse of the other person;
>> (2) is dating or has dated the other person;
>> (3) is engaged or was engaged in a sexual relationship with the other person;
>> (4) is related by blood or adoption to the other person;
>> (5) is or was related by marriage to the other person;
>> (6) has or previously had an established legal relationship:
>>> (A) as a guardian of the other person;
>>> (B) as a ward of the other person;
>>> (C) as a custodian of the other person;

(D) as a foster parent of the other person; or

(E) in a capacity with respect to the other person similar to those listed in clauses (A) through (D);

(7) has a child in common with the other person; or

(8) has adopted a child of the other person.

[17] Thus, by statutory definition, Bortka is a member of Foust's household by way of their dating and/or sexual relationship.[6] *See* I.C. § 34-6-2-44.8(a)(2). Foust testified that Seaton threatened to kill "him," if Foust tried to "take his daughter." Tr. p. 12. The trial court could reasonably infer that Seaton threatened to kill Foust's fiancé, Bortka, if Foust moved with their daughter to Florida. This is sufficient to support the trial court's decision to issue a protective order to Foust. And Foust's own children, including the daughter who Seaton terrorized, are members of her household because they are related by blood or adoption to Foust. *See* I.C. § 34-6-2-44.8(a)(4).

[18] With regard to Bortka's children, Section 34-6-2-44.8(a) provides that "An individual is a 'family or household member' of both persons to whom subsection (a)(1), (a)(2), (a)(3), (a)(4), (a)(5), (a)(6), (a)(7), or (a)(8) applies if the individual is a minor child of one (1) of the persons." I read this to mean that a minor child of a person described in subsection (a) is a family or household member of any person described in subsection (a). Therefore, Subsection (b)

---

[6] Seaton himself accused Foust of having cheated on him with Bortka. See Tr. P. 41-41.

covers Bortka's children because Bortka himself is statutorily defined as a "family or household member" of Foust.

[19] Under these facts and circumstances, I would conclude that the trial court was within its discretion to conclude that Seaton represented a credible threat to the safety of a member of Foust's household. And this constitutes a showing of family or domestic violence sufficient to justify the issuance of a protective order covering Foust, her children, Bortka, and his children.

[20] For these reasons, I would affirm the judgment of the trial court.