## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 27 2019, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Wilmer E. Goering, II
Vevay, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| R.L.N., <br> *Appellant-Respondent,* <br><br> v. <br><br> P.A.B., M.J.B., and C.L.B., Jr., <br> *Appellees-Petitioner.* | November 27, 2019 <br><br> Court of Appeals Case No. 19A-PO-877 <br><br> Appeal from the Clark Circuit Court <br><br> The Honorable William Dawkins, Jr., Magistrate <br><br> Trial Court Cause No. 10C02-1901-PO-48 10C02-1901-PO-49 10C02-1901-PO-50 |

**Tavitas, Judge.**

## Case Summary

R.N. appeals the trial court's denial of his motion to correct error after the trial court entered an order for protection against R.N. in favor of P.B., M.B., and C.B. (collectively, "Appellees").[1] We reverse.

## Issues

R.N. raises two issues on appeal, which we restate as follows:

> I. Whether the trial court erred by refusing to dismiss or transfer the case on the grounds of improper venue.

> II. Whether the evidence was sufficient to support an allegation of stalking.

## Facts

On January 23, 2019, Appellees, who are siblings, filed individual petitions for orders for protection against R.N. and requested a hearing. The petitions alleged that the Appellees each were presently or had been victims of stalking by R.N. The petitions alleged that, in 2017, R.N. threatened to kill Appellees; in 2018, R.N. "place[d] a $1,000.00 death threat for [Appellees] to be killed;" and in 2019, R.N. threatened to kill Appellees and "admitted to killing" two other individuals. Appellant's App. Vol. II pp. 7, 56, 105.

---

[1] For simplicity and ease of reading, we have removed the middle initials from the parties' names.

[4] The petitions were filed in the Clark Circuit Court. The form petition Appellees each filled out, includes the following section:

> 5. This case is filed in this county because:
>
> _____ a. the Respondent lives in this county.
>
> _____b. the incident(s) of domestic violence of family violence, stalking, or the sex offense happened in this county.
>
> _____c. I live in this county.

*Id.* at 6, 104. P.B.'s and M.B.'s petitions bear an "X" on each line preceding "a," "b," and "c." *Id.* In the margins, next to this portion of the form, however, is also handwritten: "Jefferson County, IN." *Id.* C.B.'s form is identical, except for portion "a," which appears to have been marked, but subsequently crossed out. *Id.* at 55. C.B.'s petition also includes "Jefferson County, IN," handwritten. *Id.*

[5] On February 4, 2019, R.N. filed a motion to dismiss all of Appellees' individual petitions for "lack of jurisdiction" because all parties resided in Jefferson County and because the alleged incidents also occurred in Jefferson County. *Id.* at 12, 61, 110. On February 6, 2019, R.N. also filed a motion to continue the hearing as to all petitions scheduled for February 7, 2019.

[6] The trial court held a hearing on February 7, 2019; neither R.N. nor his attorney appeared. After Appellees were placed under oath, P.B. and M.B.

represented to the trial court that R.N. was not related to Appellees but that they knew R.N. because R.N. was the guardian for Appellees' now-deceased mother beginning in 2012. M.B. alleged that R.N. stalked Appellees and "even had people follow [Appellees] and run [Appellees] off the roads." Tr. Vol. II p. 6. When asked where they lived, M.B. testified that the Appellees are homeless and that their last physical address was in Madison, Indiana. When the trial court asked Appellees whether they were living in Clark County, M.B. stated: "Right now, we are, no, we're not. We're staying here, but today, in Jefferson County [ ], where [R.N. is an elected official, R.N.] has paid the police off up there." *Id.* P.B. agreed with this statement. P.B. and M.B. elaborated that they attempted to file orders for protection in Jefferson County but "nothing happens" because the county believes Appellees are "making it up" because R.N. is "an upstanding citizen." *Id.*

[7] The trial court initially noted that the parties had no connection to Clark County, and the following colloquy occurred:

> THE COURT: But, if there's no connection between the allegations you guys make and Clark County, if you're not residents here, [R.N. is] not a resident here, and the acts you allege did not occur in Clark County, I . . .
>
> [M.B.]: The one did when he made us a threat that he was going to kill [P.B.], going to kill [C.B.], and then deadly torture and kill me for months because he thinks I, we killed our mother, and we did not. I even filed a police report.

THE COURT: Well, talk to me about that. Where, so this was a, this is a conversation that happened in Clark County?

[M.B]: Yes, it is. [R.N.] called us via phone, on one of my cell phones, called us, and [R.N.] said "I told you what I wanted you to do," speaking to [P.B.] and [P.B.] had the phone on speaker where we could all hear. [R.N.] said "you are to keep tabs of [M.B.], what [M.B.] did because I know [M.B.] killed [M.B.'s] mother, and I know [M.B.] killed [M.B.'s] mother." . . .

THE COURT: But what about the threats [ ] [R.N.] ma[d]e? . . .

[M.B.]: [R.N.] threatened to kill us all. [R.N.] has even, when [R.N.] drives by and sees us, [R.N.] even had the vehicle bugged with listening devices. How [R.N.] broke into it, I don't know because I was never a criminal or a person to break into vehicle and stuff like that. We're scared for our lives. We're scared for our lives. I did, we did not kill [our mother]. I guess the only thing I'm guilty of is loving [our mother] the way the Holy Bible says you're to love, God says you're to love your parents and do good to them if somebody is doing something. . . .

*Id.* at 6-7. At the end of the hearing, the trial court stated: "Look, the allegations you make that he has threatened you on multiple occasions is [sic] enough for me. The counsel entered an appearance for [R.N.] and they have elected not to appear. So I'll grant your orders." *Id.* at 10. The trial court issued written orders for protection on February 7, 2019.

[8] On February 28, 2019, R.N. filed a motion to reconsider the trial court's February 7, 2019 order. The trial court denied R.N.'s motion to reconsider as to the orders for protection granted to all Appellees.

On March 11, 2019, R.N. filed a motion to correct error with regard to the order for protection issued to P.B. against R.N. Specifically, R.N. argued the trial court erred in failing to grant his motion to dismiss and in denying R.N.'s motion for continuance. The trial court denied R.N.'s motion to correct error. On April 1, 2019, R.N. filed a motion to correct error with regard to the orders of protection issued to M.B. and C.B.[2] The trial court denied R.N.'s motion to correct error. R.N. now appeals.

## Analysis

At the outset, we note that Appellees did not file an appellees' brief. "When an appellee fails to submit a brief, we apply a less stringent standard of review with respect to the showing necessary to establish reversible error." *In re Paternity of S.C.*, 966 N.E.2d 143, 148 (Ind. Ct. App. 2012), *aff'd on reh'g*, 970 N.E.2d 248 (Ind. Ct. App. 2012), *trans. denied*. "In such cases, we may reverse if the appellant establishes prima facie error, which is an error at first sight, on first appearance, or on the face of it." *Id.* "Moreover, we will not undertake the burden of developing legal arguments on the appellee's behalf." *Id.*

---

[2] It appears that R.N. filed the motions on March 8, 2019; however, the motion was not listed on the CCS until April 1, 2019. The trial court indicated that "[s]ince the moving party failed to comply with Trial Rule 59(C), the Court was unaware that additional motions to correct error had been filed." Appellant's App. Vol. II pp. 99, 148. The trial court concluded "[n]onetheless, the motion to correct error is hereby denied." *Id.*

# I.   Venue

R.N. appeals from the denial of a motion to correct error.  "We generally review the denial of a motion to correct error for an abuse of discretion."  *Fox v. Bonam,* 45 N.E.3d 794, 798 (Ind. Ct. App. 2015).

Indiana Civil Protection Order Act ("ICPOA") is codified at Indiana Code Section 34-26-5.  Indiana Code Section 34-26-5-4 states:

> (a) Any court of record has jurisdiction to issue a civil order for protection.
>
> (b) A petition for an order for protection must be filed in the county in which the:
>
>> (1) Petitioner currently or temporarily resides;
>>
>> (2) Respondent resides; or
>>
>> (3) Domestic or family violence or harassment occurred.
>
> (c) There is no minimum residency requirement to petition for an order for protection.

Each court of Indiana has jurisdiction to issue a civil order for protection; however, the question here is whether Clark County was the proper venue for this order for protection.  *See Muneer v. Muneer,* 951 N.E.2d 241, 243 (Ind. Ct. App. 2011) ("Specifically, Indiana Code section 34-26-5-4(b) requires that a petition for an order for protection be filed in 1) the county in which the petitioner resides; 2) the county in which the respondent resides; *or* 3) the

county in which the domestic or family violence occurs. The Act therefore is a special venue statute to which Trial Rule 75(A)(8) applies.") (emphasis supplied).

[14] Indiana Trial Rule 75(A) states:

> Any case may be venued, commenced and decided in any court in any county, except, that upon the filing of a pleading or a motion to dismiss allowed by Rule 12(b)(3), the court, from allegations of the complaint or after hearing evidence thereon or considering affidavits or documentary evidence filed with the motion or in opposition to it, shall order the case transferred to a county or court selected by the party first properly filing such motion or pleading if the court determines that the county or court where the action was filed does not meet preferred venue requirements or is not authorized to decide the case and that the court or county selected has preferred venue and is authorized to decide the case.

[15] Preferred venue, as set out in Indiana Trial Rules 75(A)(1) through (A)(10) exists in many places, including: ". . . the place where any individual defendant so named resides;" or "the county where a claim in the plaintiff's complaint may be commenced under any statute recognizing or creating a special or general remedy or proceeding." Indiana Trial Rules 75(A)(1), (8).

[16] R.N. improperly labeled the motion to dismiss for lack of jurisdiction; however, R.N. later acknowledged in the motion to correct error that he should have used the term "venue" instead of jurisdiction. *See K.S. v. State,* 849 N.E.2d 538, 541 (Ind. 2006) ("Attorneys and judges alike frequently characterize a claim of procedural error as one of jurisdictional dimension. The fact that a trial court

may have erred along the course of adjudicating a dispute does not mean it lacked jurisdiction.").

[17] Neither R.N. nor his attorney appeared at the hearing on their motion to dismiss and on the petition for the order for protection to dispute Appellees' account of their connection with Clark County. We acknowledge R.N.'s arguments that the chronological case summary ("CCS") does not explicitly indicate the motion to dismiss was scheduled for hearing that particular day; however, at the beginning of the hearing, the trial court acknowledged the motion to dismiss was also set for hearing that day. The trial court granted the petitions for orders for protection which included a finding of venue as required by Indiana Code Section 34-26-5-4(c). R.N. and his counsel failed to appear for the hearing on the petition for the order for protection to contest the issue of venue.[3]

[18] At the hearing, Appellees acknowledged that R.N. lived in Jefferson County and that several of the events occurred in Jefferson County. Appellees also stated that one of the incidents happened while Appellees were in Clark County and that Appellees were currently homeless and living in their vehicle. The Appellees did acknowledge that their last home address was in Madison,

---

[3] R.N.'s argument that it was error for the trial court to deny R.N.'s motion for continuance is without merit. R.N. was notified of the hearing and was given an opportunity to be heard; R.N. chose not to appear. Even if the court clerk's office represented that a motion would be granted, it is the trial court, not the court clerk's office, that grants or denies these motions. Accordingly, the burden was on R.N. to ensure that someone was at the hearing on R.N.'s behalf.

Indiana (Jefferson County); however, Appellees also stated that they were living in their vehicle, and the evidence is uncontroverted, pursuant to Appellees' testimony, that they were "staying here" in Clark County. Tr. Vol. II p. 6.

[19] The statute specifically sets forth no minimum residency requirement; therefore, Appellees, living in their vehicle in Clark County, cannot be precluded from filing in Clark County when the evidence was uncontroverted. *See* Ind. Code § 34-26-5-4(c). This is especially true in light of the purpose of the ICPOA, which states:

> This chapter shall be construed to promote the:
>
> > (1) Protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner;
> >
> > (2) Protection and safety of all victims of harassment in a fair, prompt, and effective manner; and
> >
> > (3) Prevention of future domestic violence, family violence, and harassment.

I.C. § 34-26-5-1. Accordingly, Appellees established Clark County as a proper venue under the ICPOA and Indiana Trial Rule 75(A). R.N., who sought the dismissal of the petition based on venue, failed to appear, and failed to establish that preferred venue existed elsewhere. *See Indiana High School Athletic Ass'n, Inc. v. Garcia,* 876 N.E.2d 350, 354 (Ind. Ct. App. 2007) ("Indiana Trial Rule 8(C) provides that a claim of improper venue is an affirmative defense, which

the pleading party must prove. Accordingly, the IHSAA had the burden of proof in challenging venue in Lake County") *trans. denied; see also* Indiana Trial Rule 8(C) (indicating that improper venue is an affirmative defense, and thus, the "party required to affirmatively plead any matters, . . . shall have the burden of proving such matters."). R.N. failed to meet his burden to prove Clark County was not a preferred venue pursuant to the ICPOA. We, therefore, cannot say the trial court abused its discretion in denying R.N.'s motion to correct error on these grounds. [4]

## II.    *Sufficient Evidence*

[20]    R.N. also argues there is insufficient evidence to support Appellees' allegation of stalking. "To obtain an order of protection under the [ICPOA], the petition must establish by a preponderance of the evidence at least one of the allegations in the petition." *A.S. v. T.H.,* 920 N.E.2d 803, 806 (Ind. Ct. App. 2010). "In determining the sufficiency of the evidence on appeal, we neither weigh the evidence nor resolve questions of credibility." *Id.* "We look only to the evidence of probative value and reasonable inferences that support the trial court's judgment." *Id.*

---

[4] We pause briefly to acknowledge that, although we find venue is appropriate here, Appellees stated at the hearing that they have filed orders for protection in Jefferson County and "nothing happens." Tr. Vol. II p. 6. We remind Appellees that the proper course of action regarding a denied order for protection is to appeal, not to find another venue. Still, based on these facts, Clark County is a proper venue.

Appellees sought an order for protection for stalking, which is defined as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." I.C. § 35-45-10-1. The statutory definition of stalking requires Appellees to prove, by a preponderance of the evidence, a knowing or intentional "course of conduct involving repeated or continuing harassment of another person." I.C. § 35-45-10-1.

### A. Order for protection filed by P.B. and M.B.

Both P.B. and M.B. gave the trial court information surrounding the allegations of stalking. According to P.B. and M.B., the undisputed evidence at the hearing was that R.N. has "had people follow [Appellees] and run [Appellees] off the road" and threatened to kill Appellees more than once; broken into and "bugged" the Appellees' vehicle. Tr. Vol. II pp. 6, 7. P.B. and M.B. stated that R.N. was "still after" them and that the most recent contact happened just a few days before Appellees filed the petition. *Id.* at 7. P.B. and M.B. also testified that R.N. has been after them since Appellees' mother died, which was in 2013. Other than this evidence, P.B. and M.B. put forward no other specific information regarding the dates these allegations occurred.

R.N. cites *Maurer v. Cobb-Maurer,* 994 N.E.2d 753, 757 (Ind. Ct. App. 2013), in support of his arguments. There, we found:

> With respect to the extent of contact between [the parties], the trial court had before it a single email entered into evidence and a claim by [petitioner's] counsel that it was "one of many." Her counsel's description of the emails as "constant" is noticeably vague and is more akin to hyperbolic argument than to evidence. There was no mention of particular dates on which the contacts occurred, an estimation of the number of impermissible contacts over the course of a period of time, or even evidence of when the alleged impermissible contact began. "Many emails over the course of an undisclosed timeframe could be as few as two or as numerous as two million; the trial court's guess would have been as good as ours.

*Maurer,* 994 at 758-59 (internal citations and footnotes omitted).

[24] Although Appellees' petitions each allege that these events occurred in 2017, 2018, and 2019; that R.N. has harassed them since 2013; and that the most recent incident occurred a few days before the petition was filed, we do not have any specific or temporal evidence. *See C.V. v. C.R.,* 64 N.E.3d 850, 854 (Ind. Ct. App. 2016) (finding respondent's contact with petitioner was "relatively insignificant" and insufficient to prove continued or repeated harassment where respondent left notes on petitioner's car and a seven-month period elapsed between two of the notes). The evidence was devoid of any specific incident, time, place, and identification of persons affected. Both P.B. and M.B. made statements using "we"; however, they never disclose who "we" is. *See* Tr. Vol. II pp. 7-9. The evidence presented by P.B. and M.B. at the hearing was not sufficient to establish continued or repeated harassment because no evidence was presented regarding the specific time frame during which the purported stalking occurred or the dates of any of these alleged

incidents, save one. Accordingly, the evidence is insufficient to support an order for protection against P.B. and M.B.[5]

### *B. Order for protection filed by C.B.*

[25] Similarly, C.B. offered no testimony at the hearing, except to confirm R.N. was not related to him. Accordingly, this cannot be sufficient evidence regarding R.N. stalking C.B. Moreover, "[t]here must also be evidence that [respondent's] conduct qualified as harassment that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that it actually caused [petitioner] to feel terrorized, frightened, intimidated, or threatened." *Maurer,* 994 N.E.2d at 757. Again, because C.B. did not offer any testimony, we cannot find sufficient evidence with regard to his state of mine either. *See id.* at 759 (finding that the petitioner "offered no testimony at the hearing regarding the effect the contacts had on her. In fact, [petitioner] offered *no testimony at all* during the hearing. Where an inquiry is so dependent upon the victim's perception and state of mind—as is the case when issuing a [order for protection] on the grounds of stalking—[petitioner's] lack of participation works only to diminish the record and hinder our review") (emphasis supplied).

---

[5] Because we conclude there was insufficient evidence regarding the stalking allegations by P.B. and M.B., we do not address whether there was sufficient evidence regarding P.B.'s and M.B.'s state of mind. We note, however, that P.B. stated: "All I want to do is get this man put away from us. I'm sick of looking over my head, over my shoulders," and that M.B. stated: "We're scared for our lives. We're scared for our lives." *Id.* at 7, 10.

The evidence is insufficient to support an order for protection against R.N. for stalking. Accordingly, we reverse.

## Conclusion

The trial court did not abuse its discretion in denying R.N.'s motion to correct error based on improper venue; however, the evidence of stalking was insufficient. We reverse.

Reversed.

Altice, J., concur.

Brown, J., dissents with opinion.

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| R.L.N., | Court of Appeals Case No. 19A-PO-877 |
| *Appellant-Respondent,* | |
| v. | |
| P.A.B., M.J.B., and C.L.B., Jr., | |
| *Appellees-Petitioners.* | |

**Brown, Judge, dissenting.**

[29] I respectfully dissent. I do not view multiple death threats from the guardian of a recently deceased relative as "relatively insignificant." At the hearing, the court addressed and questioned P.B., M.B., and C.B. collectively about R.L.N. and the threats to "kill all three (3) of you." Transcript at 10. Ultimately, I would find that the trial court could have reasonably inferred a pattern of threatening behavior and affirm its issuance of the orders for protection.