

**FILED**

Nov 22 2016, 9:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark A. Bates
Schererville, Indiana

APPELLEE, PRO SE

C.R.

# IN THE
# COURT OF APPEALS OF INDIANA

C.V.,

*Appellant,*

v.

C.R.,

*Appellee.*

November 22, 2016

Court of Appeals Case No.
45A03-1606-PO-1282

Appeal from the Lake Circuit
Court

The Honorable Michael A.
Sarafin, Magistrate

Trial Court Cause No.
45C01-1602-PO-36

**Pyle, Judge.**

## Statement of the Case

[1] C.V. appeals the trial court's issuance of a protective order against him in favor of C.R. He argues that the trial court erred because C.R. did not produce sufficient evidence that he stalked her and, therefore, that a protective order was warranted. We agree and reverse the trial court's decision. We remand with instructions to vacate the protective order against C.V.

[2] We reverse and remand with instructions.

## Issue

Whether there was sufficient evidence to support the trial court's issuance of a protective order against C.V.

## Facts

[3] In July of 2015, C.R. found a note on her car outside of her workplace at the Department of Veterans Affairs ("V.A."). The note "was basically saying things about [her] physical attributes." (Tr. 36). She was able to identify the author as a Marine due to a reference in the note to "Semper-Fi," but the note did not otherwise contain any identifying information. (Tr. 38). Two weeks later, C.R. found a second note on her car that "said about the same type of thing" as the first note and again lacked any identifying information. (Tr. 37). She filed a report about the note with the V.A. Police, and the police asked her whether she had seen any patients who could have left the notes. She reviewed her patients but could not determine who might have left them.

[4] Seven months later, C.R. found a third note on her car at work. It was "the same type of note," only "a little bit more kinky." (Tr. 37-38). On another day, she then found a fourth note on her car. After this note, C.R. was able to match the dates on which she had found the four notes with dates that C.V. had visited the V.A. as a patient. She forwarded this information to the officer investigating the notes, and he then confirmed that C.V. had placed the note on C.R.'s car when he reviewed the V.A.'s parking lot surveillance camera

footage.[1] This officer, Jeffrey Trama ("Officer Trama"), called C.V., and C.V. admitted that he had left the notes. Officer Trama told C.V. to stop leaving the notes, and C.V. did so.

[5] C.R. did not press criminal charges against C.V., but she filed a pro se petition for an ex parte protective order against him on February 19, 2016.[2] The trial court granted C.R.'s petition on February 22, 2016 and issued the ex parte protective order. However, on March 7, 2016, C.V. requested a hearing on the protective order, and the trial court held a hearing on April 6, 2016.

[6] At the hearing, C.R. appeared pro se, and C.V. appeared represented by counsel. The trial court asked C.R. if she would like to continue the hearing so that she could retain an attorney, and she declined the trial court's offer. The trial court then told C.R.: "All right; well, ma'am, if you proceed to represent yourself, you understand that the rules of evidence apply. Counsel may interpose objections based on those rules of evidence[,] and you may not be fully trained or versed in those rules; do you understand that?" (Tr. 7). C.R. replied, "Yes," and the hearing continued as planned. (Tr. 8).

[7] C.R. testified to the events described above and further described the notes she had received. She said that in the third note, C.V. had written "your laugh is

---

[1] The location of C.R.'s car when C.V. left the first three notes had previously prevented the officer from identifying him in the surveillance footage.

[2] This petition is not a part of the record.

even more than music to my ears." (Tr. 44). Then, she testified that in the fourth note C.V. had written "I wish you could have been mine; things would be so much far [sic] better for us. . . . X-O-X-O-X-O." (Tr. 44). C.R. considered this note "crazy-creepy." (Tr. 38).

[8] Officer Trama also testified, and during his direct examination, C.R. attempted to admit the four notes and the surveillance video of C.V. into evidence. C.V.'s attorney objected on the grounds that C.R. had failed to tender either the notes or video to C.V. and that C.R. had failed to lay a proper foundation for their admission. The trial court sustained the objection, reminding C.R. that it could not teach her how to lay a foundation for evidence. Thereafter, C.R. failed to properly offer the notes or video for admission into evidence, and they were not admitted.

[9] At the conclusion of the hearing, the trial court took the matter under advisement. On May 6, 2016, it issued a protective order prohibiting C.V. from contacting C.R. for two years, among other restrictions. As a basis for its order, the trial court found that C.R. had shown by a preponderance of the evidence that C.V. had stalked her and that C.V. represented a "credible threat to" her safety. (App. 7). C.V. now appeals.

## Decision

[10] On appeal, C.V. argues that C.R. failed to present sufficient evidence to support the trial court's issuance of the protective order. Specifically, he contends that

there was no evidence that he stalked her as required for the issuance of a protective order.

[11]    Initially, we note that C.R. did not file an appellee's brief. When an appellee fails to submit a brief, we need not undertake the burden of developing argument on the appellee's behalf. *A.S. v. T.H.*, 920 N.E.2d 803, 805 (Ind. Ct. App. 2010). Rather, we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error. *Id.* Prima facie error in this context is defined as "'at first sight, on first appearance, on the face of it.'" *Id.* (quoting *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006)). When the appellant is unable to meet his burden, we will affirm. *Id.* at 806. In making this determination, we will neither reweigh the evidence nor resolve questions of credibility. *Tons v. Bley*, 815 N.E.2d 508, 511 (Ind. Ct. App. 2004). We look only to the evidence of probative value and reasonable inferences that support the trial court's judgment. *Id.*

[12]    This Court has noted the "'significant ramifications of an improperly granted protective order.'" *J.K. v. T.C.*, 25 N.E.3d 179, 181 (Ind. Ct. App. 2015) (quoting *Barger v. Barger*, 887 N.E.2d 990, 993 (Ind. Ct. App. 2008)). "For example, at the state level, violation of the trial court's protective order is 'punishable by confinement in jail, prison, and/or a fine.' I.C. § 34-26-5-3. . . . Thus, an improperly granted protective order may pose a considerable threat to the respondent's liberty." *Id.*

[13] In order for a trial court to issue a protective order, the petitioner must prove by a preponderance of the evidence that stalking has occurred. *Tons*, 815 N.E.2d at 511; *see also* I.C. § 34-26-5-2(a)(2) (allowing a petitioner to file a petition for a protective order against a "person who has committed stalking"). Indiana law defines "stalking" as "'a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened *and* that actually causes the victim to feel terrorized, frightened, intimidated, or threatened.'" *Maurer v. Cobb-Maurer*, 994 N.E.2d 753, 757 (Ind. Ct. App. 2013) (quoting I.C. § 35-45-10-1) (emphasis added).

[14] Here, C.V. claims that C.R. did not produce any evidence to support the trial court's conclusion that he stalked her because the contents of the notes were never admitted into evidence. He contends that, because there was no evidence of the content of the notes, there was no evidence that his actions would have caused a reasonable person to feel terrorized, frightened, intimidated, or threatened. Accordingly, we must consider whether the evidence that C.V. left C.R. four notes and C.R.'s vague testimony regarding the content of those notes were sufficient to prove that a reasonable person would have felt terrorized, frightened, intimidated, or threatened by C.V. We conclude that they were not.

[15] As a basis for this conclusion, we find our decision in *Maurer* persuasive. There, we held that a man had not stalked his former wife, even though his former wife alleged that he had sent her "constant emails and text messag[es]." *Maurer*, 994 N.E.2d at 755. The wife had admitted one email from him into

evidence and had testified that it was "one of many emails." *Id.* In the email, he wished her a Happy Valentine's Day, told her he loved her, and told her that he wanted to restore their marriage. *Id.* He also told her that he forgave her for her romantic relationship with another man and that he disapproved of divorce. *Id.*

[16] In our opinion on appeal, we noted that contact does not have to be threatening on its face to constitute stalking. *Id.* at 757. However, we held that contact "on more than one occasion cannot—without more—constitute stalking." *Id.* We concluded that there was not sufficient evidence of stalking in *Maurer* because, in part, we found the wife's testimony that she had received "many" and "constant" emails from her former husband vague. *Id.* at 758-59. We noted that she had not provided any dates for the emails, other than the email she had admitted into evidence, or an estimate of the total number of emails she had received. *Id.* at 758. We concluded that "'[m]any' emails over the course of an undisclosed timeframe" could have been "as few as two or as numerous as two million." *Id.* at 759. We also found it significant that the wife had not produced any evidence that she had asked her former husband to stop sending her emails. *Id.* This factor was significant because "one can hardly characterize mutual communication between two parties as harassment within the meaning of the stalking statute." *Id.* Based on these two factors, we concluded that the

wife had not produced sufficient evidence of contact that would have caused a reasonable person to feel terrorized, frightened, intimidated or threatened.[3] *Id.*

[17] Based on our decision in *Maurer*, we conclude that C.R. did not produce sufficient evidence that C.V.'s contact with her constituted stalking. Although her testimony regarding the number of times C.V. contacted her was not vague, it is clear that his contact with her was relatively insignificant. He left notes on her car on four occasions, and an interval of seven months passed between two of the notes. C.V.'s contact can hardly be considered frequent. More significantly, though, as in *Maurer*, C.R. did not produce any evidence that she asked C.V. to stop sending her the notes or that he persisted after she asked him to stop. To the contrary, Officer Trama testified that C.V. did not send any notes once he contacted him and asked him to stop.

[18] Finally, while this was not a factor in *Maurer*, we must note that the nature of C.V.'s contact appears to have been relatively non-threatening. Specifically, he contacted C.R. in a public area on dates that happened to coincide with his treatment at the V.A. He did not make any attempts to express the contents of his notes in person or in private. Instead, he left the notes in a public location where C.R. would find them. These factors might not be dispositive under

---

[3] For the sake of comparison, we also noted in *Maurer* that we had affirmed the trial court's issuance of a protective order in *Andrews v. Ivie*, 956 N.E.2d 720 (Ind. Ct. App. 2011). *Id.* at 758. In *Andrews*, there was evidence regarding "the extent of the contacts, numerous unwelcome gifts from Andrews, Ivie's repeated demands that he leave her alone, her attempts to avoid contact from him, and Ivie's testimony regarding the effect of the contacts on her." *Id.* (discussing *Andrews*, 956 N.E.2d at 724).

different circumstances. However, because there was no evidence that the contents of the notes were threatening, we cannot conclude that there was sufficient evidence that a reasonable person would have felt terrorized, frightened, intimidated, or threatened by C.V.'s acts under these circumstances. Accordingly, we conclude that C.V. has presented a prima facie case that C.R. did not produce sufficient evidence that C.V. stalked her.[4] As a result, we reverse the trial court and remand with instructions for the trial court to vacate the protective order.

[19] Reversed and remanded with instructions.

Bradford, J, and Altice, J., concur.

---

[4] Because we have concluded that a reasonable person would not have felt terrorized, frightened, intimidated, or threatened by C.V.'s acts, we need not address whether C.R. actually felt terrorized, frightened, intimidated, or threatened. *See* I.C. § 35-45-10-1.