## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 22 2017, 10:06 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan J. Schueler
Ferguson Law
Bloomington, Indiana

ATTORNEY FOR APPELLEE

Justin J. Harrison
Slotegraaf Niehoff, P.C.
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Han Chong,

*Appellant-Defendant,*

v.

Jung Hee Kim,

*Appellee-Plaintiff.*

February 22, 2017

Court of Appeals Case No.
53A01-1609-PO-2073

Appeal from the Monroe Circuit Court

The Honorable Valeri Haughton, Judge

Trial Court Cause No.
53C08-1511-PO-2174

**Bailey, Judge.**

# Case Summary

Han Chong ("Chong") appeals an order of protection preventing him from having contact with his business associate Jung Hee Kim ("Kim"), who alleged that she had been the victim of stalking. Chong presents the issue of whether the protective order was issued absent sufficient evidence that he stalked Kim.[1] We reverse.

# Facts and Procedural History

Kim purchased a sake bar in Bloomington, Indiana, and was permitted to enter the United States from Korea on an investor's visa. Chong, whose family owned an adjoining business property, provided assistance to Kim both professionally and personally. He trained Kim in restaurant operations and offered professional advice. Additionally, he located an apartment for Kim and loaned her a vehicle and cell phone. Chong, Kim, and a restaurant employee named Gina socialized together. Chong also interacted with Kim's children.

On November 13, 2015, Kim petitioned for an order of protection, asserting as grounds that she had been a victim of a sex offense and stalking. Kim alleged

---

[1] Chong also alleged that the trial court abused its discretion by allowing Kim to continue testifying after her attorney indicated that he had concluded his questions. We need not address this issue, as the issue of sufficiency of the evidence is dispositive.

that Chong had, on several occasions, made comments of a sexual nature that caused Kim to feel "very ashamed and embarrassed." (App. at 15.)

[4] On January 4 and January 8, 2016, the trial court conducted a hearing. At the conclusion of the hearing, the trial court verbally ordered both parties to refrain from contacting the other. On August 8, 2016, the trial court entered an order of protection as requested by Kim, concluding that Kim had been a victim of stalking. Chong now appeals.

# Discussion and Decision

[5] Under Indiana Code § 34-26-5-2(a):

> A person who is or has been a victim of domestic or family violence may file a petition for an order for protection against a:
>
> (1) family or household member who commits an act of domestic or family violence; or
>
> (2) person who has committed stalking under IC 35-45-10-5 or a sex offense under IC 35-42-4 against the petitioner.

[6] "Stalk" means "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." I.C. § 35-45-10-1. "Harassment" means "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible

contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." I.C. § 35-45-10-2.

[7] A protective order may be issued when a trial court finds, by a preponderance of the evidence, that the respondent represents a credible threat to the safety of the petitioner. *Maurer v. Cobb-Maurer*, 994 N.E.2d 753, 756 (Ind. Ct. App. 2013) (citing I.C. § 34-26-5-9(f)). An improperly granted protective order has significant ramifications; specifically, a violation of a trial court's protective order is punishable by imprisonment or a fine. *C.V. v. C.R.*, 64 N.E.3d 850, 853 (Ind. Ct. App. 2016) (citing I.C. § 34-26-5-3). When reviewing the sufficiency of evidence to support a protective order, the reviewing court does not reweigh the evidence and will not judge witness credibility. *Maurer*, 994 N.E.2d at 755. We consider only the probative evidence and reasonable inferences that support the judgment. *Id.*

[8] Kim testified in support of the protective order that the following events occurred:

> Chong asked Kim for a kiss and Kim responded that she did not want to kiss Chong;
>
> Chong stated to Kim that if she slept with him, he would give her preferential treatment;
>
> Chong again referred to his interest in having a sexual relationship with Kim, stated that he didn't waste time, and they would be sleeping together before the end of the year;

> Kim became aware that Chong had a handgun when Kim borrowed Chong's vehicle and he removed the handgun to keep it away from Kim's children;

> In a text message exchange, Chong admitted to having sexual thoughts when he recalled a visit that he [or he and Kim] had made to an adult bookstore[2] and he questioned whether Kim thought he was dangerous; and

> After Kim had filed for a protective order, Chong came into a store, looked at Kim, and came close to the register where Kim was purchasing cigarettes.

[9] Kim testified that Chong's sexual overtures caused her to feel "shameful and embarrassing [sic]" and that she "kind of felt threatened." (Tr. At 60.) Kim explained that, in Korea, private ownership of guns is not permitted and Chong's "representation" that he had a gun and text reference to "a dangerous man" collectively made her feel that Chong was "really threatening." (Tr. at 64.)

[10] From a subjective standpoint, Kim may have perceived a threat to herself or experienced terror, fright, or intimidation. However, a protective order on stalking grounds also requires the satisfaction of an objective test. The petitioner must establish by a preponderance of the evidence that a "course of conduct would cause a reasonable person to feel terrorized, frightened,

---

[2] Kim testified that Chong drove to the store and went inside. She did not address whether or not she went inside. According to Chong, he waited in a hallway while Kim made a purchase.

intimidated, or threatened." *Cruse v. C.C.*, 58 N.E.3d 974, 977 (Ind. Ct. App. 2016).

[11] In *Cruse*, a panel of this Court found insufficient evidence of stalking where the petitioner testified that her ex-husband: threatened to make a scene at their child's school; went to her place of employment and made her boss uncomfortable; caused teachers to feel uncomfortable; made claims at a baseball game that the petitioner "was probably banging a colleague" and then confronted the colleague by "getting in his face." *Id.* at 976. There was no evidence of any threat of physical harm. *Id.* at 977.

[12] Likewise, in *Maurer*, we found insufficient evidence of stalking where the evidence showed only that an ex-husband had sent the petitioner "constant emails and text messages" but the petitioner did not testify as to the effects and she did not claim that she had asked her ex-husband to stop contacting her. 994 N.E.2d at 755. The Court observed that "it is often the case that stalking is found where contact between persons includes some form of physical threat" but further observed that "there is no requirement that the contact at issue be threatening on its face, and stalking may be found where other evidence is sufficient to prove that the contact amounted to harassment." *Id.* at 757-58. However, where evidence of harassment is lacking, "the mere fact that contact occurred between [the parties] on more than one occasion cannot – without more – constitute stalking." *Id.* at 757. The *Maurer* Court re-iterated that the conduct must be such as to "cause a reasonable person to feel terrorized, frightened, intimidated, or threatened." *Id.*

[13] Very recently, in *C.V.*, we found that a protective order was unwarranted when the conduct at issue consisted of the respondent's leaving four notes at the petitioner's workplace, some of which were described as "kinky." 64 N.E.3d at 851. The Court found it to be "significant" that there was no evidence that the petitioner had asked the respondent to stop sending the notes or that he had persisted after such a request. *Id.* at 854. Also, the contact "appeared to have been relatively non-threatening." *Id.* We concluded: "because there was no evidence that the contents of the notes were threatening, we cannot conclude that there was sufficient evidence that a reasonable person would have felt terrorized, frightened, intimidated, or threatened by C.V.'s acts under these circumstances." *Id.*

[14] We find these decisions persuasive in the instant case. Kim did not ask Chong to stop his allegedly intimidating communications before she petitioned for a protective order. There is no evidence that Chong contacted Kim after the petition was filed. The communications, although sexual in nature, did not suggest that Chong intended sexual contact by force. Nor is there evidence that Chong used his handgun to threaten or intimidate Kim. Given Kim's historical lack of contact with weapons, she may well have found Chong's ownership of a handgun to be unsettling. However, our review of the record leaves us with a firm conviction that there was insufficient evidence to support a finding that the conduct at issue would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened. The trial court's issuance of the protective order was in error.

Reversed.

Kirsch, J., and May, J., concur.