## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 23 2018, 8:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly S. Lytle
Banks & Brower LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Elizabeth M. Smith
Poynter & Bucheri, LLC
Mooresville, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| S.H., <br> *Appellant-Respondent,* <br><br> v. <br><br> M.A., <br> *Appellee-Petitioner* | October 23, 2018 <br><br> Court of Appeals Case No. 18A-PO-526 <br><br> Appeal from the Marion Circuit Court <br><br> The Honorable Sheryl Lynch, Judge <br><br> Trial Court Cause No. 49C01-1712-PO-47187 |

**Vaidik, Chief Judge.**

## Case Summary

[1]      M.A. sought a protective order against S.H. (the mother of his daughter), alleging that she sent him 165 text messages during a twenty-four-hour period

and that this constituted stalking. The trial court issued a protective order, and S.H. now appeals, arguing that the evidence does not prove that she committed stalking. We agree that the evidence is not sufficient and therefore reverse the trial court's issuance of the protective order.

## Facts and Procedural History

M.A. and S.H. were previously involved in an intimate relationship and have a daughter together, G.A. After several years of no contact, M.A. and S.H. started talking again around September 2017. On December 27, 2017, M.A. filed a petition for an order of protection, alleging that S.H. committed stalking against him. M.A. claimed that S.H. sent him "165 text messages" on December 3, 2017, that expressed anger at his decision to have another child and at his performance as G.A.'s father.[1] Appellant's App. Vol. II p. 7.

A hearing was held on February 2, 2018. M.A. was represented by counsel, and S.H. represented herself. In support of his claim that S.H. committed

---

[1] M.A. also alleged that S.H. sent him several text messages on September 8, 2017, and that she falsely reported to DCS that he had harmed his girlfriend's child. Appellant's App. Vol. II p. 7. On appeal, however, M.A. does not rely on any text messages from September 8 in arguing that the evidence is sufficient to prove that S.H. committed stalking. Therefore, we do not address them. As for M.A.'s claim that S.H. made a false report to DCS, S.H. testified at the hearing that she did not make a false report to DCS, to which the trial court responded:

> Well, I can tell [you] right now, people have the right to do anything that is legitimate and to further the law. Making DCS reports is legitimate until and unless it becomes abusive and then it is not legitimate or for a legitimate purpose. It is then considered, after a certain point, harassment. I do not think we are having that discussion today.

Tr. p. 59. Because the trial court did not rely on the DCS report in finding that M.A. proved that S.H. committed stalking, we do not address it.

stalking, M.A. testified that S.H. sent him 165 text messages on December 3, 2017. Tr. pp. 23, 67. M.A. did not offer into evidence all 165 text messages from S.H. Rather, M.A. offered into evidence approximately five text messages that S.H. sent M.A. over the course of three hours on December 3 (Exhibit A). Here are three of those text messages:

> Also it's not my problem or [G.A.'s] problem that your in the situation your in. Instead of focusing on yourself and focusing on getting back in your daughters life after you were out of your other relationship what do you do? You find someone else and knock her up when you don't see your own daughter.

> Instead you want to blame everyone else for being in the situation your in. You had fu**ing rights to [G.A.] this whole time she wasn't taken away from you and I never once denied any sort of visitation with her and you know that.

> And you know what [M.A.] your words and manipulations mean nothing to me now because you know dam* good and well you should [have] wondered about [G.A.'s] Halloween and if she had a good thanksgiving. Your just trying to turn it around and manipulate me I see all of it so clearly now because it's always been about [M.A.] and you know what? It still is.

Ex. A. The trial court admitted Exhibit A.

[4]     S.H. testified and admitted sending M.A. numerous text messages on December 3 (she did not think that there were 165 though because she had to break them up into smaller messages so that M.A. could read them on his phone); however, she said the text messages in Exhibit A were part of a larger conversation between the two of them and that Exhibit A did not show that.

Tr. pp. 11, 22, 58.  In support, S.H. offered into evidence Exhibit 2, which is the entire forty-six-page conversation between her and M.A. that started on December 3 and ended on December 4.  M.A. objected to Exhibit 2 on grounds that S.H. had made some notations in the margins and therefore the copy was not "pristine."  *Id.* at 54.  The trial court sustained M.A.'s objection but said that S.H. could submit a clean copy.  S.H. then asked the court if she could remove the notations by ripping off the margins, which would only take "two seconds," but the court said there was no "time for [her] to do that this afternoon" because they were "going to wrap up within the next few minutes[.]"  *Id.* at 54-55.

[5]     The trial court later issued an order of protection pursuant to Indiana Code chapter 34-26-5, finding that M.A. had shown, by a preponderance of the evidence, that "stalking has occurred sufficient to justify the issuance of this Order."  Appellant's App. Vol. II p. 61.  The order expires February 7, 2020.

[6]     S.H. now appeals.

# Discussion and Decision

[7]     S.H. raises two issues on appeal, one of which we find dispositive.  That is, S.H. contends that M.A. did not present sufficient evidence to support the trial court's issuance of the protective order.

[8]     We begin by noting that there are "significant ramifications of an improperly granted protective order."  *C.V. v. C.R.*, 64 N.E.3d 850, 853 (Ind. Ct. App.

2016) (quotation omitted). "For example, at the state level, violation of the trial court's protective order is 'punishable by confinement in jail, prison, and/or a fine.'" *Id.* (quoting Ind. Code § 34-26-5-3). Thus, an improperly granted protective order may pose a considerable threat to the respondent's liberty. *Id.*

[9] Indiana Code section 34-26-5-2(a)(2) provides, "A person who is or has been a victim of domestic or family violence[2] may file a petition for an order of protection against a . . . person who has committed stalking under IC 35-45-10-5." "Stalking" is defined as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." Ind. Code § 35-45-10-1. "Harassment," in turn, is defined as "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." Ind. Code § 35-45-10-2.

[10] In response to S.H.'s argument, M.A. argues that the text messages in Exhibit A are sufficient to prove that S.H. committed stalking because they "demonstrate[] harassing behavior and express[] anger with" him. Appellee's

---

[2] Indiana Code 34-6-2-34.5 provides, "For purposes of IC 34-26-5, domestic and family violence . . . includes stalking (as defined in IC 35-45-10-1) or a sex offense under IC 35-42-4, whether or not the stalking or sex offense is committed by a family or household member."

Br. p. 10. Exhibit A contains approximately five text messages that S.H. sent M.A. during a three-hour period on one night, December 3. Although S.H. is undoubtedly emotional in the text messages, the five messages, by themselves, do not establish "repeated or continuing **impermissible** contact" with M.A. Rather, they reflect that S.H. was angry with M.A. about his parenting (or lack thereof).

[11] M.A. next argues that the evidence is sufficient because S.H. sent him a total of 165 text messages on December 3. M.A., however, does not tell us what these messages say or whether they were part of a larger conversation between M.A. and S.H. For her part, S.H. testified that the text messages in Exhibit A were part of a larger conversation between them. M.A. did not dispute that below, nor does he dispute that on appeal. As stated above, when S.H. tried to admit the entire forty-six-page conversation as Exhibit 2, M.A. objected on grounds that the copy was not "pristine."[3] But had Exhibit 2 been admitted, it would have been clear that the messages in Exhibit A were part of a much larger conversation between M.A. and S.H. As this Court has stated before, "mutual communication between two parties [does not qualify] as harassment within the meaning of the stalking statute." *Maurer v. Cobb-Maurer*, 994 N.E.2d 753, 759 (Ind. Ct. App. 2013). Because M.A. objected to Exhibit 2 and the trial court excluded it, he cannot then rely on the messages contained within Exhibit 2 to

---

[3] M.A., however, did not object to other exhibits from S.H. that also had notations in the margins. *See* Exs. 1, 3, & 5.

argue that the evidence is sufficient to prove that S.H. committed stalking. Accordingly, we find that the evidence is not sufficient to support the trial court's issuance of the protective order based on stalking. We therefore reverse the trial court and remand with instructions for the court to vacate the protective order.

[12] Reversed and remanded.

Riley, J., and Kirsch, J., concur.