## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 10 2019, 6:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Robert R. Faulkner
Faulkner Law Office
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ryan Matthew Hart,<br>*Appellant-Respondent,*<br><br>v.<br><br>R.D.,<br>*Appellee-Petitioner.* | October 10, 2019<br><br>Court of Appeals Case No.<br>19A-PO-579<br><br>Appeal from the<br>Vanderburgh Superior Court<br><br>The Honorable<br>Robert J. Pigman, Judge<br>The Honorable<br>Jill R. Marcrum, Magistrate<br><br>Trial Court Cause No.<br>82D03-1812-PO-6746 |

**Kirsch, Judge.**

[1]   Ryan Matthew Hart ("Hart") appeals the trial court's entry of a protective order issued against him and in favor of R.D.  He raises several issues on appeal,

which we consolidate and restate as whether R.D. presented sufficient evidence to support the trial court's issuance of a protective order against Hart.

[2] We affirm.

## Facts and Procedural History

[3] R.D. and Hart had been dating on and off from April 2017 to December 2018. On December 21, 2018, R.D. filed a petition for an order of protection against Hart and requested a hearing on the matter. *Appellant's App. Vol. 2* at 12-17. R.D. alleged that she had been the victim of domestic or family violence and stalking, and that Hart was the perpetrator. *Id*. at 12. She also alleged Hart had attempted to and did cause her physical harm and that he had placed her in fear of physical harm. *Id*. at 13. R.D. alleged that these incidents occurred in 2018 on October 13, November 2, November 12, and December 4. *Id*. at 14-15. R.D. asked that the order for protection cover herself as well as three other family or household members. *Id*. at 15. On December 21, 2018, the trial court issued an *ex parte* protective order without notice to Hart.

[4] On January 25, 2019, the trial court began a hearing regarding the imposition of a permanent protective order and heard the following testimony from R.D.:

> [Hart] and I dated for a period of about two years off and on, um, I previously filed a protected order. Um, it was only extended six months — ended up trying to date again, um, the situation that we had before when I had tried to break it off he had threatened suicide a couple of times, um, was aggressive, had intimidated me a couple times.

Um, so this time around after I tried to break it off, um, I cut off all communication and he started contacting me on my work email and reaching out to family and friends who he's never even met. Um, and I'm just trying to put some distance between it and get no contact. This is the only way to do it.

*Tr. Vol. II* at 4. R.D. testified that Hart "had his cousin message [her] on December twenty-first. He called [her] parents' house; he had his mother call [her] parents' house on New Year's Eve." *Id*. at 5. She also testified that "he reached out to a couple of friends on December fifteenth on social media, and then three more friends on December twenty-first on social media." *Id*. At that time, the hearing was continued to February 22, 2019 to allow Hart to obtain counsel. The *ex parte* protective order was also continued.

[5] The following evidence was introduced when the hearing continued on February 22, 2019. Focusing on specific incidents, R.D. testified that she "showed up" at Hart's house on October 13, 2018, and "he had another woman in his bed." *Id*. at 12. R.D. was upset and asked Hart to return her house key, but he refused. *Id*. R.D. "tried to get in [Hart's] truck to get [her house key], he immediately hopped in the truck, [with R.D. in it,] took off down the road driving erratically, slapping [her]—physically assaulted [her] busting [her] lips." *Id*. R.D. said that, even after that day, Hart still tried to get in touch with her. *Id*.

[6] Hart's version of events differed from R.D.'s version. He testified that he and R.D. had a mutual relationship until December 11, 2018, and although it was "off and on," R.D. was the one who rekindled the relationship. *Id*. at 32.

Regarding the events of October 13, 2018, Hart testified that the woman R.D. found in his home was just a friend. *Id.* Hart said he was leaving in his truck when R.D. jumped in; he said he stopped multiple times to try and get her out of the truck. *Id.* Hart said that R.D. had taken back her house key in October 2018, and that he was the one who had been punched in the face and neck by R.D. while he drove the truck. *Id.* at 34.

[7] R.D. described a second incident that occurred on November 2, 2018, when she went to Hart's house to return some of his possessions. *Id.* at 13. R.D. testified that, after she dropped a bag of his things onto the lawn, he "ran out, stood in front of [her] vehicle, refused to get out from the front of [her] vehicle, um, [R.D.] threatened to call the cops; he said he would wait till the cops got there and run inside." *Id.* R.D. had to drive through a cornfield to get out, and then Hart showed up at her house about ten minutes later beating on the doors and the windows trying to talk. *Id.* When Hart went to R.D.'s house, a friend of R.D.'s called the police. *Id.* at 37. After the police arrived, they "banned" Hart from R.D.'s residence. *Id.* at 13. Hart testified that he was in his home when he saw R.D. drive near his property and throw things onto his yard. *Id.* at 36. Hart said he stepped onto the driveway, and R.D. drove around him. *Id.* Hart said that R.D. did not drive through a cornfield, as she stated. *Id.*

[8] Finally, R.D. testified about incidents that occurred in December. She said that Hart had downloaded an app that made it look like he was calling her from different phone numbers. *Id.* at 13. R.D. testified that he called and texted her "over and over" trying to get her to talk to him. *Id.* R.D. said that Hart

"threatened to kill himself several times when [she] tried to break off the relationship." *Id.* R.D. changed her phone number due to these harassing calls and messages. *Id.* However, after R.D. cut off her phone, Hart began emailing R.D. "on her work email." *Id.* She testified that she received four emails at her office on December 4, 2018 and one on each of December 7 and December 19. *Id.* at 17. R.D. testified that, during their relationship, Hart subjected her to emotional, verbal, and physical abuse. *Id.* Furthermore, Hart applied for a job at R.D.'s place of employment.

[9]     Again, the stories diverged. Hart said that even though R.D. changed her phone number, she repeatedly called him from a blocked number and tried to reach him through email and Instagram. *Id.* at 34. Hart conceded that he was in contact with R.D.'s father—a person covered by the protective order. *Id.* at 37. Hart stated that the contact occurred only after R.D.'s father had sent Hart a message on Facebook. *Id.* In an effort to avoid violating the protective order, Hart had his mother reach out to R.D's father. *Id.* Hart spoke only once to R.D.'s father, who "just wanted to let [Hart] know that he didn't have any issues with [him] and he didn't want . . . to be in this paperwork and told [Hart he ] was always welcome to come by." *Id.* Hart said that R.D. continued to try and be in touch with him through December 11, 2018; Hart claimed that R.D. even said that she was going to get the ban dropped as a Christmas gift for Hart. *Id.* at 38. Hart testified that his job managing a strip club created some of the conflict between the two. *Id.* at 39. Two days before the protective order was

filed, Hart contacted R.D. and told her that he had quit the job at the strip club. *Id.* Hart testified that that was the last time he contacted R.D. *Id.*

[10] During the hearing, the trial court admitted into evidence two exhibits proffered by Hart. Respondent's Exhibit 1 was a copy of Instagram messages between Hart and R.D. during the period from November 23 through December 2, 2018. *Ex. Vol. I* at 14-100. Respondent's Exhibit 2 was a copy of emails between Hart and R.D. from December 2018 on the dates of December 10, 11, 13, 14, and 19. *Id.* at 102-03. The exhibits reveal that the parties willingly corresponded with each other after each of these incidents. However, the exchanges also reflect that the parties had a complicated relationship.

[11] On February 22, 2019, the trial court issued a protective order against Hart and in favor of R.D. The trial court found that "domestic or family violence has occurred sufficient to justify the issuance of this Order." *Appellant's App. Vol. 2* at 7. The trial court made no finding that stalking had occurred. *Id.* at 7-9. Hart now appeals.

## Discussion and Decision

[12] We begin by noting that R.D. has not filed an appellee's brief. When an appellee fails to file a brief, we need not undertake the burden of developing an argument on appellee's behalf. *C.V. v. C.R.*, 64 N.E.3d 850, 852 (Ind. Ct. App. 2016). Instead, applying a less stringent standard of review, we may reverse the trial court's judgment if the appellant can prove a case of *prima facie* error. *Id.* "*Prima facie* error in this context is defined as, 'at first sight, on first appearance,

or on the face of it.'" *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006) (quoting *Santana v. Santana,* 708 N.E.2d 886, 887 (Ind. Ct. App. 1999)).

[13] Hart contends that there was insufficient evidence to support the issuance of a protective order against him and in favor of R.D., both because the trial court disregarded the testimony of his two witnesses and because the incidents upon which the order was issued were remote in time. "Protective orders are similar to injunctions and, therefore, in granting such an order the trial court must *sua sponte* make special findings of fact and conclusions thereon." *Fox v. Bonam*, 45 N.E.3d 794, 798 (Ind. Ct. App. 2015) (citing *Hanauer v. Hanauer*, 981 N.E.2d 147, 148 (Ind. Ct. App. 2013)). We apply a two-tiered standard of review: we first determine whether the evidence supports the findings, and then we determine whether the findings support the order. *Id*. at 149. In deference to the trial court's proximity to the issues, we disturb the order only where there is no evidence supporting the findings or the findings fail to support the order. *Koch Dev. Corp. v. Koch*, 996 N.E.2d 358, 369 (Ind. Ct. App. 2013), *trans. denied*. We do not reweigh evidence or reassess witness credibility, and we consider only the evidence favorable to the trial court's order. *Id*. The party appealing the order must establish that the findings are clearly erroneous. *Id*. "Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made." *Mysliwy v. Mysliwy*, 953 N.E.2d 1072, 1076 (Ind. Ct. App. 2011) (citation omitted), *trans. denied*.

[14] Pursuant to the Indiana Civil Protection Order Act ("CPOA"), "[a] person who is or has been a victim of domestic or family violence may file a petition for an

order for protection against a . . . family or household member who commits an act of domestic or family violence[.]" Ind. Code § 34-26-5-2(a); *M.R. v. B.C.*, 120 N.E.3d 220, 223 (Ind. Ct. App. 2019). "An individual is a 'family or household member' of another person if the individual . . . is dating or has dated the other person . . . ." Ind. Code § 34-6-2-44.8(a)(2). A finding that domestic violence has occurred sufficient to justify the issuance of a protective order means that a respondent represents a credible threat to the safety of a petitioner or a member of the petitioner's household. Ind. Code § 34-26-5-9(f) (West 2018).

[15] Here, R.D. testified that she and Hart had been dating for over a year. R.D. then raised the following three incidents in support of her request for a protective order: (1) that Hart had hit and harmed her in October 2018; (2) that he had blocked the driveway when she tried to leave Hart's home in November 2018; and (3) that he had repeatedly made unwanted calls to R.D. and sent her unwanted emails. "To obtain an order of protection, the petitioner must establish at least one of the allegations in the petition by a preponderance of the evidence." *M.R.*, 120 N.E.3d at 223. Ignoring the latter two incidents, the trial court found that, "[R.D.] has shown, by a preponderance of the evidence, that domestic or family violence has occurred sufficient to justify the issuance of this Order." *Appellant's App. Vol. 2* at 7. R.D. testified that on October 13, 2018, R.D. "tried to get in [Hart's] truck to get [her house key], he immediately hopped in the truck, [with R.D. in it,] took off down the road driving erratically, slapping [her]—physically assaulted [her] busting [her] lips." *Id.* at

12. Hart testified that he did not hit R.D.; instead, she had hit him. *Tr. Vol. II* at 34. The evidence presented to the trial court was contradictory and could have supported a finding of the need for a protective order or a finding that no protective order was warranted. The decision rested on the interpretation of the weight of the evidence and the credibility of the witnesses.

[16] We recognize that trial courts must exercise judgment, particularly as to credibility of witnesses, and "we defer to that judgment because the trial court views the evidence firsthand and we review a cold documentary record." *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 941 (Ind. 2005); *see In re Adoption of O.R.*, 16 N.E.3d 965, 973 (Ind. 2014) (trial judge is in best position to judge the facts, determine witness credibility, and "get a feel for the family dynamics"). Thus, to the extent credibility or inferences are to be drawn, we give the trial court's conclusions substantial weight. *MacLafferty*, 829 N.E.2d at 941. Hart has not shown that the trial court committed prima facie error when it entered an order of protection in favor or R.D. We affirm the trial court's issuance of the protective order, finding that there was sufficient evidence for the trial court to conclude by a preponderance of the evidence that "domestic or family violence has occurred sufficient to justify the issuance of this Order." *Appellant's App. Vol. 2* at 7.

[17] Affirmed.

[18] Baker, J., and Crone, J., concur.