## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 30 2020, 10:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Katherine N. Worman
Evansville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Adoption of K.R.G.D., <br><br> K.D., <br><br> *Appellant-Respondent,* <br><br> v. <br><br> J.N. and B.N., <br><br> *Appellees-Petitioners.* | September 30, 2020 <br><br> Court of Appeals Case No. 20A-AD-654 <br><br> Appeal from the Vanderburgh Superior Court <br><br> The Honorable Brett J. Niemeier, Judge <br> The Honorable Renee A. Ferguson, Magistrate <br> The Honorable Jonathan J. Parkhurst, Referee <br><br> Trial Court Cause No. 82D04-1908-AD-92 |

**Kirsch, Judge.**

[1]   K.D. ("Father") appeals the trial court's order granting the petition for adoption of K.R.G.D. ("Child") filed by J.N. ("Grandfather") and B.N. (together,

"Grandparents"). Father raises two issues, of which we find the following restated issue dispositive: whether the trial court erred when it concluded that Father's consent to the adoption was not required because he knowingly failed without justifiable cause to communicate significantly with Child for at least one year when able to do so.

[2] We affirm.

## Facts and Procedural History

[3] Father and B.G. ("Mother") are the biological parents of Child, who was born on September 26, 2012. *Appellant's App. Vol. II* at 28. Father and Mother never lived together, and after Child's birth, Mother had custody of Child. *Id*. at 87. While in the custody of Mother, Child was the subject of two Child in Need of Services ("CHINS") actions due to allegations against Mother, one in 2014 and one in 2018. *Pet'r's Exs*. 5, 6, 7. During the CHINS cases, Father was allowed to have parenting time with Child but was never ordered to pay child support. *Pet'r's Exs*. 5, 6. Father testified that, prior to 2018, he exercised parenting time including overnights as he and Mother had agreed, and that there were no restrictions on his communication with Child. *Tr. Vol. II* at 24.

[4] During the 2018 CHINS case, Child was initially placed with Grandparents, and Grandparents later petitioned the trial court for third-party custody of Child. *Pet'r's Ex*. 6. On September 10, 2018, the trial court issued an order awarding Grandparents third-party custody of Child ("the September 2018 Order"). *Pet'r's Ex*. 2. In the September 2018 Order, Mother and Father were

ordered to have parenting time pursuant to the Indiana Parenting Time Guidelines with Father being designated the non-custodial parent. *Id.* Father was to have alternating weekend parenting time from 6:00 p.m., returning Child Sunday at 6:30 p.m. and mid-week visits every other Wednesday. *Id.* Father, Mother, and Grandparents were ordered to enroll in and use the Our Family Wizard ("Family Wizard") program and application for communication and record keeping purposes. *Id.* Each party was to pay the yearly fee for the program, which ranged between $99.00 and $219.97 and had a fee waiver program available. *Id*; *Appellant's App. Vol. II* at 94-97. The September 2018 Order did order Father to pay child support. *Pet'r's Ex.* 2.

[5] Father utilized Family Wizard one time to communicate with Grandparents, but, thereafter, he no longer used it and testified that he did not have the funds to pay for Family Wizard, claiming that it cost $375.00. *Appellant's App. Vol. II* at 109; *Tr. Vol. II* at 11, 32-33. Shortly after the September 2018 Order, Father had one visitation with Child. *Tr. Vol. II* at 66. Father testified that after that visit, he would text Grandparents and never received a response; however, Grandfather testified that after reviewing his phone records, there were no calls or texts from Father during the time period of March 2018 through September 2019. *Id.* at 25-26, 72-73.

[6] In September or October 2018, Father obtained full time employment as the evening supervisor at the University of Evansville's cafeteria and dining services. *Id.* at 17-18. He remained employed there at all pertinent times of this case and earned $15.00 per hour, working between forty-two to forty-five hours

per week. *Id*. From April 2019 until October 2019, Father resided at the Community Corrections complex ("the Safe House") due to a violation of his probation from a prior criminal case. *Def.'s Exs*. B, C, D. While at the Safe House, Father was only able to go back and forth to work but did have the capability to call Child, although Grandparents did not have a record of his calling. *Tr. Vol. II* at 29, 40, 44-45, 72-73. Except for the time he was in the Safe House, Father lived with his brother in a house that they rented since September 2018. *Id*. at 32, 35-36.

[7] Since the September 2018 Order, Grandparents have lived at the same address and had the same home and cell phone numbers. *Id*. at 86, 91-92. Father testified that he was aware that Grandparents had two homes but only ever visited one of these homes in an attempt to visit Child, which was not the home where the Grandparents resided. *Id*. at 41-42. Father testified that he did not go to the second home because he "didn't want to interfere [with] anything to make it a bigger state in front of my son. I didn't want it to be an altercation or anything like that in front of my son." *Id*. at 42. Mother died in July 2019. *Id*. at 19. Father learned of Mother's passing from a friend and attended the funeral, where he had contact with Child. *Id*. at 19, 48.

[8] On August 16, 2019, Grandparents filed a petition for adoption, seeking to adopt child and claiming that Father's consent was not necessary. *Appellant's App. Vol. II* at 27-29. Father filed his objection to the adoption on September 12, 2019. *Id*. at 38-39. A hearing regarding whether Father's consent to the adoption was necessary was held on January 22, 2020. *Id*. at 6. At the hearing,

Father acknowledged that he had only had contact with Child two times since the September 2018 Order. *Tr. Vol. II* at 28. He also testified that he had offered to provide clothing and school supplies for Child, but that Grandparents told him they did not need anything. *Id*. at 14, 30-31. He presented testimony that he once purchased groceries and left them at one of the addresses he had for Grandparents; however, he later learned Grandparents did not live at that residence. *Id*. at 30. The receipt that Father presented to support this showed that the groceries were purchased on July 21, 2018, which was before the September 2018 Order and more than a year before the petition for adoption was filed. *Pet'r's Ex*. E.

[9] On February 19, 2020, the trial court issued its order, finding that Father's consent was not necessary pursuant to Indiana Code section 31-19-9-8 because, for at least one year, Father failed without justifiable cause to communicate significantly with Child when he was able to do so and failed to provide for the care and support of Child when able to do so as required by law. *Appellant's App. Vol. II* at 108-14. A final hearing was held on the petition for adoption, after which, on March 5, 2020, the trial court issued the adoption decree finalizing the adoption of Child by Grandparents. *Id*. at 117-18. Father now appeals.

## Discussion and Decision

[10] We begin by noting that Grandparents have not filed an appellee's brief. When an appellee fails to file a brief, we need not undertake the burden of developing

an argument on appellee's behalf. *C.V. v. C.R.*, 64 N.E.3d 850, 852 (Ind. Ct. App. 2016). Instead, applying a less stringent standard of review, we may reverse the trial court's judgment if the appellant can prove a case of *prima facie* error. *Id.* "*Prima facie* error in this context is defined as, 'at first sight, on first appearance, or on the face of it.'" *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006) (quoting *Santana v. Santana,* 708 N.E.2d 886, 887 (Ind. Ct. App. 1999)).

[11] Father argues that the trial court erred when it determined that his consent was not necessary for Grandparents' adoption of Child to proceed. When reviewing a trial court's ruling in an adoption case, the appellant bears the burden of overcoming the presumption that the trial court's decision is correct. *In re Adoption of S.W.*, 979 N.E.2d 633, 639 (Ind. Ct. App. 2012) (citing *In re Adoption of A.S.,* 912 N.E.2d 840, 851 (Ind. Ct. App. 2009), *trans. denied*). We will neither reweigh the evidence nor judge the credibility of witnesses; instead, we will consider the evidence most favorable to the trial court's decision, and the reasonable inferences to be drawn therefrom, to determine whether sufficient evidence exists to sustain the decision. *Id.* We will not disturb the trial court's ruling unless the evidence leads to only one conclusion and the trial court reached an opposite conclusion. *Id.*

[12] Parental consent is generally required to adopt a child in Indiana. Ind. Code § 31-19-9-1. However, consent to adoption is not required from:

> A parent of a child in the custody of another person if for a
> period of at least one (1) year the parent:

(A) fails without justifiable cause to communicate significantly with the child when able to do so; or

(B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

Ind. Code § 31-19-9-8(a)(2). "If a parent has made only token efforts to support or to communicate with the child the court may declare the child abandoned by the parent." Ind. Code § 31-19-9-8(b). The petitioner bears the burden to prove this by clear and convincing evidence. *In re Adoption of M.S.*, 10 N.E.3d 1272, 1279 (Ind. Ct. App. 2014).

[13] Father argues that the trial court erred when it found that, pursuant to Indiana Code section 31-19-9-8(a)(2)(A), his consent was not necessary for Grandparents' petition to adopt Child to proceed because he failed without justifiable cause to communicate significantly with the child when able to do so. Specifically, Father contends that, in making its finding that Father did not have significant or meaningful contact with Child, the trial court disregarded his testimony that he experienced difficulty communicating with Child because Grandparents changed their phone number and moved without notifying him. He acknowledges that, in the September 2018 Order, the trial court ordered him and Grandparents to utilize Family Wizard to communicate, but maintains that he did not have the money to pay for the program and that the September 2018 Order did not condition his right to exercise parenting time on registering for or utilizing Family Wizard. Father further asserts that Grandparents' actions

hampered and denied him the ability to have parenting time and communicate with Child.[1]

[14] Here, the evidence most favorable to the trial court's decision showed that, after the September 2018 Order, which was one year prior to the filing of Grandparents' petition for adoption, Father only had contact with Child twice, once in September 2018 for a regular visitation and the second time at Mother's funeral, which was a brief encounter that occurred approximately ten months after the September 2018 Order. Although Father argues that Grandparents thwarted his attempts to contact them and maintain communication with Child, the evidence showed that Grandparents did not receive any calls or texts from March 2018 until the time they filed the petition for adoption. The trial court had ordered Father and Grandparents to communicate through Family Wizard, but Father did not utilize the program because he claimed that it was cost prohibitive and cost $375.00. The evidence presented belied Father's

---

[1] Father also argues that the trial court erred when it found that his consent was not necessary under Indiana Code section 31-19-9-8(a)(2)(B) because he knowingly failed to provide for the care and support of Child when able to do so as required by law or judicial decree. Indiana Code section 31-19-9-8(a)(2) is written in the disjunctive -- consent of the parent is not required where either failure to communicate significantly *or* failure to provide support is established. *In re Adoption of S.W.,* 979 N.E.2d 633, 640 (Ind. Ct. App. 2012). Therefore, because we find that the trial court did not err in finding that consent was not necessary because Father failed to communicate significantly with Child, we do not reach Father's argument under (a)(2)(B). Father further argues that the trial court erred when it found that his consent was not necessary because it was in Child's best interests. Under Indiana Code section 31-19-9-8(a)(11), consent is not required if the petitioner proves by clear and convincing evidence that the parent is unfit to be a parent and the best interests of the child would be served if the court dispensed with the parent's consent. However, here, the trial court did not find that subsection as a justification for determining that Father's consent was not necessary. *See Appellant's App. Vol. II* at 114.

contention, however, and showed that Family Wizard cost between $99.00 and $219.97 and that there was a fee waiver program available. *Appellant's App. Vol. II* at 94-97. Further, evidence was presented that, contrary to Father's contention, Grandparents had not changed their phone number or moved during the year prior to the petition being filed. Father even acknowledged that he was aware that Grandparents had two homes, but only ever visited one of these homes in his attempts to visit Child, which was not the home where the Grandparents resided. *Tr. Vol. II* at 41-42. He testified that he did not go to the second home because he "didn't want to interfere [with] anything to make it a bigger state in front of my son. I didn't want it to be an altercation or anything like that in front of my son." *Id.* at 42. Father's arguments are a request to reweigh the evidence, which we cannot do. *In re Adoption of S.W.*, 979 N.E.2d at 639. Sufficient evidence was presented to sustain the trial court's determination that Father's consent was not necessary for the adoption of Child by Grandparents to proceed due to Father's failure without justifiable cause to communicate significantly with Child when able to do so.

[15]  Affirmed.

Pyle, J., and Tavitas, J., concur.