
FILED
Nov 16 2023, 8:57 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Seth M. Lahn
Lahn Law LLC
Bloomington, Indiana

ATTORNEY FOR APPELLEE

Jamie Sutton
Sutton Law Office
Bloomington, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

L.R.
b/n/f H.R.,
*Appellant-Respondent,*

v.

M.H.
b/n/f N.H.,
*Appellee-Petitioner*

November 16, 2023

Court of Appeals Case No.
23A-PO-366

Appeal from the Monroe Circuit
Court

The Honorable
Kara Krothe, Judge

Trial Court Cause No.
53C08-2205-PO-000893

**Opinion by Judge May**
Chief Judge Altice and Judge Foley concur.

**May, Judge.**

L.R. appeals the trial court's grant of an order of protection to M.H. under the Civil Protection Order Act ("CPOA") based on a finding that L.R. had been stalking M.H.[1] L.R. raises three issues on appeal,[2] but we need address only one: whether the evidence most favorable to M.H. supports the issuance of a protective order. We reverse.[3]

## Facts and Procedural History[4]

In August 2021, L.R. and M.H. began seventh grade at the same middle school. M.H. was thirteen years old when school started, and L.R. turned thirteen in

---

[1] In the briefs and portions of the Transcript, L.R. is referred to with he/him pronouns, but L.R. testified L.R.'s pronouns are "she" or "they[.]" (Tr. Vol. II at 118) (capitalization removed). At the time of trial, M.H. self-identified with "she/her" pronouns, but M.H. identified with "he/him or they/them" pronouns when the parties dated. (Tr. Vol. II at 54.) To avoid confusion, we will refrain from the use of singular pronouns and instead will refer to the parties individually only by their initials. Any use herein of the pronoun "they" will be in its plural form to indicate both L.R. and M.H. simultaneously.

[2] One of the other issues raised on appeal by L.R. was whether the Indiana Legislature intended the CPOA to apply to 13-year-old respondents. L.R. noted that the filing of a petition against an "unemancipated minor" is permitted by Indiana Code section 34-26-5-2(e), which also gives trial courts the discretion to transfer the matter to a juvenile court if a hearing is set, but that the CPOA provided none of the types of protection for juveniles that we are accustomed to seeing in the juvenile delinquency context, such as consultation with a trusted adult, confidentiality of identity, closed proceedings, assistance of a lawyer, and a process for expungement. (*See* Amended Appellant's Br. at 39-42.) Given Indiana's preference for juvenile rehabilitation, rather than punishment and stigmatization, s*ee, e.g.*, *State v. Neukam*, 189 N.E.3d 152, 155 (Ind. 2022) ("the policy underlying our juvenile-justice system is that juvenile offenders should be rehabilitated instead of punished and stigmatized"), we too are perplexed by the disparity between the CPOA and our juvenile justice system. As we reverse on other grounds, we need not reach this issue, but we invite our Legislature to consider providing additional guidance to Indiana's courts about when and how it intends the CPOA to be applied to minors.

[3] We held Oral Argument on October 17, 2023, in the Court of Appeals Courtroom at the Indiana Statehouse. We thank counsel for their preparation and thoughtful discussion of the issues.

[4] We remind Appellee's counsel that he may adopt Appellant's Statement of Facts or write his own Statement of Facts, but he ought not present opposing counsel's work-product as his own. *See, e.g.*, *Utica Twp. Fire Dep't Inc. v. Floyd Cnty. Bd. of Zoning Appeals*, 126 N.E.3d 912, 914 (Ind. Ct. App. 2019) (condemning "wholesale appropriation" of language from appellate opinions without proper citation).

October 2021. In late September 2021, L.R. and M.H. began an intense dating relationship that lasted approximately two weeks. During those two weeks, the couple had frequent social media contact, and they engaged in sexual foreplay in a girls' bathroom during school. L.R. ended their romantic relationship, which upset M.H. (*See* Tr. Vol. II at 71) ("I didn't take it very well. I was very uhm, upset…."). Thereafter, the two would be in the school hallways at the same time while travelling from class to class, because they had classes near one another. They also were part of the same friend group and tried to remain friends. However, in January 2022, M.H. messaged L.R. and indicated that M.H. was not comfortable being friends with L.R. and that M.H. did not want L.R. to contact M.H. anymore.

[3] L.R. thereafter violated M.H.'s request that they not have contact in four ways in the spring of 2022. First, when M.H. was in the school hallway with a third student who was friends with both M.H. and L.R., L.R. approached the mutual friend to talk to the friend for a few moments and then walked away. L.R. was within a few feet of M.H. and did not speak to M.H., but M.H. believed L.R. was staring at M.H. the entire time. Second, M.H. felt L.R. was trying to contact her through mutual friends because L.R. was asking mutual friends if the friends knew why M.H. would not be friends with L.R., and those mutual friends were telling M.H. that L.R. was contacting them to ask. Third, one day at school, M.H. tripped, and when M.H. looked back, L.R. was behind M.H., which led M.H. to believe L.R. had tripped M.H. Finally, at school in early May 2022, L.R. approached M.H. and asked if the two "could just move on

from what . . . happened." (*Id*. at 49.) M.H. said no, and L.R. walked away without saying anything else.

[4] The night that L.R. asked about putting the situation behind them, M.H. discussed the situation with M.H.'s father, who filed a petition for a protective order on May 4, 2022.[5] The trial court issued an ex parte order of protection that same day. On May 23, 2022, L.R. filed a motion to vacate the ex parte protection order, a motion to set the matter for a hearing, and a motion to transfer the case to juvenile court. That same day, the trial court denied the motion to transfer the case to juvenile court and set the other matters for a hearing on July 18, 2022. On June 1, 2022, L.R. filed a motion for change of judge, which was granted by the court the same day. On June 9, 2022, a new judge was assigned and set a hearing for June 22, 2022. On June 22, 2022, L.R. appeared by counsel and the school appeared, but M.H. failed to appear, so the court reset the hearing on the motion to vacate the ex parte order for July 11, 2022.

[5] On July 5, 2022, M.H. filed a motion to continue the hearing set for July 11. L.R. filed an objection to the continuance, but the court granted the continuance and reset the hearing for August 9, 2022. L.R. then filed a notice of intent to take a deposition, which the court indicated it would address at the

---

[5] The Appendix provided by Appellant included only the Chronological Case Summary and the final order entered by the trial court. While the failure to provide the Petition or any other documents in the Appendix did not impede our review in this case, we strongly encourage Appellant's counsel to provide us with a more complete Record in future appeals.

August 9 hearing. After the hearing, the trial court refused to vacate the ex parte order of protection, re-issued the Ex Parte Order protecting M.H.,[6] and affirmed the cause remained set for a full hearing on the request for a protective order on September 22, 2022.

[6] In late August 2022, L.R. again filed notice of intent to take a deposition. On September 6, 2022, M.H. filed a motion for a continuance. The trial court granted the motion for continuance and reset the hearing on the Petition for Protection Order for November 10, 2022. The parties appeared on November 10, and the court heard evidence, but the evidence was not completed and the hearing had to be continued to December 8, 2022. The court heard the remaining evidence on December 8, 2022.

[7] On January 23, 2023, the trial court entered a final order[7] granting protection to M.H. because L.R. had been stalking M.H. Deleting formal parts, that order provided:

---

[6] The trial court re-issued the Ex Parte Order because the original order had been entered without providing notice to, and without hearing from, the school as required by Indiana Code section 34-26-5-2(f).

[7] On December 20, 2022, the trial court entered a Permanent Order for Protection. On January 23, 2023, L.R. filed a motion to correct error, and M.H. filed a motion to deny the motion to correct error. That same day, the trial court issued a new final order, which we are asked to review herein, and issued the following Notice to Parties:

> The Motion to Correct Errors is denied as it is untimely filed. Upon examination of the Motion to Correct Error the Court found that it had made two scrivener errors that the Court now corrects. One, the Respondent was present at the hearing and two, only the box for stalking should have been checked. The protective order has been amended. Court forwards to the Clerk for service.

## ORDER FOR PROTECTION

## FINDINGS

This matter having been heard by the Court on 12/8/2022, the Court now makes the following Findings:

a. [L.R.] filed a timely Request for Hearing under Ind. Code § 34-26-5-10(a); and/or,

b. N/A

c. The Petitioner was present at the hearing and the Respondent was present.

d. This order does not protect an intimate partner or child.

e. The Respondent had notice and an opportunity to be heard.

f. The Respondent represents a credible threat to the safety of the Petitioner or a member of the Petitioner's household.

g. The Petitioner has shown, by a preponderance of the evidence, that stalking has occurred sufficient to justify the issuance of this Order.

h. The Respondent does not agree to the issuance of the Order for Protection.

i. The following relief is necessary to bring about a cessation of the violence or the threat of violence.

## ORDER

---

(Appellant's App. Vol. II at 14.)

<u>Section 1 – General Provisions</u>

1. The Respondent is hereby enjoined from threatening to commit or committing acts of domestic or family violence, stalking, sex offenses, a course of conduct involving repeated or continuing contact with Petitioner that is intended to prepare or condition the Petitioner for sexual activity (as defined in IC § 35-42-4-13), or harassment against the Petitioner and the following designated family or household members, if any: [none listed.]

2. The Respondent is prohibited from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with the Petitioner.

3. N/A

4. The Respondent is ordered to stay away from the residence, school, and/or place of employment of the Petitioner. The Respondent is further ordered to stay away from the following place(s) that is/are frequented by the Petitioner and/or Petitioner's family or household members: Tri-North Middle School[.]

\* \* \* \* \*

<u>Section 5 – Duration of Order</u>

<u>THIS ORDER FOR PROTECTION EXPIRES:</u>

ON THE 20th DAY OF December, 2024.

(Appellant's App. Vol. II at 17-19.)

# Discussion and Decision[8]

[8]     L.R. argues there was insufficient evidence from which the trial court could determine that stalking occurred. When we review the trial court's entry of a protective order, our review

> is two-tiered: we first determine whether the evidence supports the findings and then whether the findings support the protective order. In deference to the trial court's proximity to the issues and the witnesses, we will only reverse where there is no evidence supporting the findings or the findings fail to support the order. In addition, we do not reweigh the evidence or reassess the credibility of the witnesses. The appellant bears the burden of establishing that the trial court's findings are clearly erroneous.

*P.D. v. D.V.*, 172 N.E.3d 306, 310 (Ind. Ct. App. 2021) (internal citations omitted). Findings are clearly erroneous when our review of the record "leaves us firmly convinced that a mistake has been made. We do not defer to conclusions of law, however, and evaluate them de novo." *Fox v. Bonam*, 45

---

[8] M.H. petitioned for a protective order on May 4, 2022, and the trial court entered an ex parte protective order the same day. On May 23, 2022, L.R. moved to set aside the protective order and have a hearing on the merits. Due in part to continuances requested by M.H., and granted over the objection of L.R., the trial on this matter did not conclude until December 2022. We remind the trial court that Indiana Code section 34-26-5-10(b) requires trial courts to set a hearing on a challenge to an ex parte order "not more than thirty (30) days after the request for a hearing is filed unless continued by the court for good cause shown." This requirement exists because any delay occurring after the entry of an ex parte protective order implicates a respondent's due process rights. *See Allison v. Pepkowski*, 6 N.E.3d 467, 470 (Ind. Ct. App. 2014) (noting due process rights implicated when respondent subject to ex parte order for seven months without a hearing and without adequate explanation for the delay by the trial court).

N.E.3d 794, 798 (Ind. Ct. App. 2015) (quoting *Mysliwy v. Mysliwy*, 953 N.E.2d 1072, 1076 (Ind. Ct. App. 2011), *trans. denied*)).

[9] M.H. petitioned for an order of protection under the CPOA, "which exists to promote the protection and safety of all victims of domestic or family violence[9] and harassment in a fair, prompt, and effective manner." *P.D.*, 172 N.E.3d at 310 (citing Ind. Code § 34-26-5-1(1-2)). The CPOA's third aim is to prevent "future domestic violence, family violence, and harassment." Ind. Code § 34-26-5-1(3). At the same time, we must remember that "an improperly granted protective order may pose a considerable threat to the respondent's liberty[.]" *Barger v. Barger*, 887 N.E.2d 990, 994 (Ind. Ct. App. 2008). Therefore, "a court faced with a request for a protective order must balance, on the one hand, the need to protect actual and threatened victims against, on the other, the onerous burden borne by those erroneously subject to such an order." *S.H. v. D.W.*, 139 N.E.3d 214, 219 (Ind. 2020).

[10] For an order of protection to be granted, a petitioner "must establish at least one of the allegations in the petition by a preponderance of the evidence." *M.R. v. B.C.*, 120 N.E.3d 220, 223 (Ind. Ct. App. 2019). In addition, "the petitioner must prove the respondent is a "present, credible threat to the petitioner or

---

[9] For purposes of the CPOA, an allegation of stalking is an allegation of domestic and family violence, even if the alleged stalker is not a family or household member. *See* Ind. Code § 34-6-4-34.5 ("For purposes of [CPOA], domestic and family violence also includes stalking (as defined in IC 35-45-10-1) or a sex offense under IC 35-42-4, whether or not the stalking or sex offense is committed by a family or household member.").

someone in the petitioner's household." *P.D.*, 172 N.E.3d at 310. "The threat posed by the respondent is viewed objectively, and the threat must be credible, meaning plausible or believable." *Id*. "Thus, the petitioner must prove, by a preponderance of the evidence, that there are reasonable grounds to believe that the respondent presently intends to harm the petitioner or the petitioner's family." *Id*. If the petitioner meets their burden, the trial court "must issue a protective order and 'grant relief necessary to' end the violence or threat of violence." *S.D. v. G.D.*, 211 N.E.3d 494, 498 (Ind. 2023) (quoting Ind. Code § 34-26-5-9(h)). When entering a protective order, because such orders are similar to injunctions, "a trial court must make special findings of fact and conclusions thereon."[10] *P.D.*, 172 N.E.3d at 310.

[11] M.H.'s petition was filed pursuant to Indiana Code section 34-26-5-2(c)(2), which provides: "(c) A parent, a guardian, or another representative may file a petition for an order for protection on behalf of a child against a: . . . (2) person who has committed stalking under IC 35-45-10-5 . . . ." Stalking has the following four elements:

> (1) "a knowing or intentional course of conduct"
>
> (2) "repeated or continuing harassment of another person"
>
> (3) harassment "that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened" and

---

[10] Because of this requirement, we are perplexed by the trial court's December 8, 2022, denial of L.R.'s motion for Trial Rule 52 findings and conclusions, (App. Vol. II at 12), and we remind the trial court of its obligation to enter specific findings in protective order cases.

> (4) harassment "that actually cause[d] the victim to feel
> terrorized, frightened, intimidated, or threatened."

*See* Ind. Code § 35-45-10-1.  The term "repeated" as used in that definition means "more than once."  *M.R.*, 120 N.E.3d at 224.  "Harassment" means:

> [C]onduct directed toward a victim that includes but is not
> limited to repeated or continuing impermissible contact that
> would cause a reasonable person to suffer emotional distress and
> that actually causes the victim to suffer emotional distress.
> Harassment does not include statutorily or constitutionally
> protected activity, such as lawful picketing pursuant to labor
> disputes or lawful employer-related activities pursuant to labor
> disputes.

Ind. Code § 35-45-10-2.  As relevant herein, "[i]mpermissible contact" includes "[f]ollowing or pursuing the victim" and "[c]ommunicating with the victim[,]" Ind. Code § 35-45-10-3(a), but that list is "nonexclusive."  Ind. Code § 35-45-10-3(b).

[12]  In January 2022, M.H. informed L.R. that M.H. did not want to be friends with or have more contact with L.R.  Between then and the first week of May – looking only at the facts and reasonable inferences most favorable to M.H. – four "impermissible contacts" occurred: (1) L.R. stared[11] at M.H. as L.R. approached and spoke to a student standing next to M.H.; (2) L.R. indirectly

---

[11] For purposes of this analysis, because the parties did not present argument about the issue, we assume without deciding that staring at someone is "contact" that can be impermissible.

contacted M.H. by asking mutual friends why M.H. would not be friends with L.R.; (3) M.H. tripped under circumstances that led M.H. to speculate that L.R. had tripped her; and (4) L.R. approached M.H. to ask if they could move past what happened when they dated. M.H. and M.H.'s father both testified that M.H. was emotionally distressed about the situation at school. If we presume that those four contacts by a former romantic partner could "cause a reasonable person to suffer emotional distress[,]" then the facts most favorable to the judgment could support a finding that M.H. experienced "harassment." Ind. Code § 35-45-10-2 (defining harassment as "repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress").

[13] However, harassment becomes "stalking" only if it is a repeated and continuing course of conduct that causes the victim to feel, and would cause a reasonable person to feel, "terrorized, frightened, intimidated, or threatened." Ind. Code § 35-45-10-1. In *L.O. v. D.O.*, 124 N.E.3d 1237, 1240 (Ind. Ct. App. 2019), we reversed the issuance of a protective order when the record demonstrated the parties had contentious "disagreements over money and time with children[,]" but "no evidence that [estranged wife] felt terrorized, frightened, intimidated or threatened[.]" Similarly, we have held that four non-threatening notes left on a car and vague testimony about the content of the notes was not sufficient "to prove a reasonable person would have felt terrorized, frightened, intimidated, or threatened" as required for the entry of a protective order. *C.V. v. C.R.*, 64 N.E.3d 850, 854 (Ind. Ct. App. 2016)

[14] We find ourselves faced with a similar situation herein. There is no evidence in the record that L.R. ever threatened M.H. or M.H.'s family verbally. Between the request for no communication in January and the filing of the petition for a protective order in May, M.H. alleged only four "impermissible" contacts, even though the teens presumably were in the same hallway at the same time multiple times a day, five days a week, for most of those weeks. Two of L.R.'s contacts – the question in May and the indirect contact through friends – appear directed toward trying to repair their friendship because they had mutual friends.

[15] We acknowledge our Indiana Supreme Court's recent echoing of Chief Judge Altice's statement "that 'the trial court is the one to make the call'" when the evidence would allow a trial court to grant or deny a petition. *S.D.*, 211 N.E.3d at 498 (quoting *S.D. v. G.D.*, 195 N.E.3d 406, 411 (Ind. Ct. App. 2022) (Altice, C.J., dissenting), *reh'g denied*, *trans. granted*). We also acknowledge that M.H. speculates L.R. was the reason she tripped, because she saw him behind her in the hallway after she fell, which M.H. asserts on appeal constituted a "physical attack or harm inflicted." (Appellee's Br. at 13.) Nevertheless, M.H. testified: "I was never scared that [L.R.] would actually hurt me physically." (Tr. Vol. II at 73.) Instead, M.H. was afraid that M.H. would be hurt again emotionally. (*See id.* at 72-73.)

[16] We do not doubt that a thirteen-year-old would experience, and might still experience two years later, emotional distress around a former romantic partner following rejection by that partner. After all, any reasonable person experiences

some level of emotional distress when rejected by someone for whom the person feels love. But not all emotional distress is equivalent to the sort of terror and fear of violence that justifies an injunction against another person's behavior. While we sympathize with M.H.'s circumstances and understand M.H.'s desire to not see or interact with L.R., M.H.'s desire to avoid a former romantic partner does not justify a protective order against L.R. *See*, *e.g.*, *Cruse v. C.C.*, 58 N.E.3d 974, 977 (Ind. Ct. App. 2016) (reversing entry of a protective order because there was no evidence respondent placed victim in fear of physical harm). We accordingly reverse the trial court's entry of a protective order.

## Conclusion

[17] Because a reasonable person would not have felt terrorized, frightened, intimidated, or threatened by L.R.'s four contacts with M.H. in four months, and as M.H. testified to not feeling physically threatened, we reverse the trial court's entry of a protective order in favor of M.H.

[18] Reversed.

Altice, C.J., and Foley, J., concur.